ROBERT P. MOLINA, ESQ., SBN 6422
rmolina@pyattsilvestri.com
PYATT SILVESTRI
701 Bridger Avenue, Suite 600
Las Vegas, Nevada 89101
(702) 383-6000
(702) 477-0088 (fax)
Attorneys for Defendants
GORDON DENNY and PV HOLDING CORP.

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RONALD CARPENTER JR., an individual,<br><br>Plaintiff,<br><br>vs.<br><br>GORDON DENNY, an individual; PV HOLDING CORP. dba AVIS CAR RENTAL, a foreign corporation; CANONICAL GROUP LIMITED, a foreign corporation; DOES I through V, inclusive; and ROE CORPORATIONS II through V, inclusive,<br><br>Defendants.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>Intervenor. | CASE NO.:  2:23-cv-00208-RFB-NJK |

**DEFENDANTS GORDON DENNY AND PV HOLDING CORP.'S PARTIAL OPPOSITION TO CANONICAL GROUP LIMITED'S MOTION FOR SUMMARY JUDGMENT**

Defendants GORDON DENNY (hereinafter "DENNY") and PV HOLDING CORP. dba AVIS CAR RENTAL (hereinafter "AVIS"), by and through their attorney, Robert P. Molina, Esq. of Pyatt Silvestri, hereby submit their Partial Opposition to CANONICAL GROUP LIMITED's Motion for Summary Judgment.

This Partial Opposition is made and based upon the Memorandum of Points and Authorities, the papers and pleadings on file herein, the attached exhibits, and any oral

. . .

1

1 argument the Court may allow at a hearing on this Motion.

2 DATED this 5th day of January, 2024.

PYATT SILVESTRI

/s/ Robert P. Molina, Esq.
ROBERT P. MOLINA, ESQ., SBN 6422
701 Bridger Avenue, Suite 600
Las Vegas, Nevada 89101
Attorneys for Defendants
GORDON DENNY and PV HOLDING CORP.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

DENNY and AVIS do not oppose the arguments made by CANONICAL GROUP LIMITED (hereinafter "CANONICAL") regarding Plaintiff's claims against CANONICAL regarding alleged negligent hiring, training, supervision, retention, and policies/procedures, as there is no evidence whatsoever supporting those allegations. However, DENNY and AVIS oppose CANONICAL's motion relating to CANONICAL's potential liability based on respondeat superior.

CANONICAL received incidental benefits from DENNY's actions prior to the accident. Furthermore, DENNY had traveled to Las Vegas from London for the purpose of his work CANONICAL, and DENNY getting food and going back to his hotel was foreseeable by CANONICAL and necessary for DENNY's comfort, convenience, health, and welfare. Thus, DENNY actions remained within the course and scope of his employment. The evidence presented by DENNY and AVIS establish that DENNY was acting within the course and scope of his employment with CANONICAL at the time of the subject accident, especially given that the Court is to view all facts and draw all inferences in the light most favorable to DENNY and AVIS, as they are nonmoving parties. In the alternative, since whether an employee is acting within the course and scope of his employment is a question of fact, the evidence presented by DENNY and AVIS is sufficient to at least create a genuine issue of

1 material fact, which renders summary judgment in favor of CANONICAL
2 inappropriate.

## II.

## **STATEMENT OF UNDISPUTED FACTS**

This case involves an automobile accident involving Plaintiff and DENNY that occurred in the early morning hours of November 30, 2019. See ECF No. 1-2, Plaintiff's Second Amended Complaint, filed January 12, 2023, p.3.[1]  At the time of the subject accident, DENNY was employed as a recruiter by CANONICAL and was based in CANONICAL's office in London, England.  See ECF No. 40, CANONICAL's Motion for Summary Judgment, filed December 15, 2023, pp.4-5.  DENNY's employment contract with CANONICAL required him to travel for company business on occasion.  Id. at 5.  On Friday, November 29, 2019, DENNY traveled from London to Las Vegas to attend the Amazon Web Services conference on behalf of CANONICAL.  Id. at 7.

Though the conference did not begin until Monday, December 2, 2019, DENNY took a flight that arrived in Las Vegas on Friday, November 29, 2019.  Id. at 7.  It was CANONICAL that determined what date DENNY flew from London to Las Vegas for this conference.  See Relevant Portions of Vol. 2 of Deposition of DENNY, taken August 24, 2023, which are attached hereto as Exhibit "A"[2], 37:3-14.  DENNY's supervisor at CANONICAL picked November 29, 2019 for DENNY's flight to Las Vegas to allow DENNY to have adequate time to adjust for the time change between London and Las Vegas (an eight hour difference) before the conference.  Id. at 84:10-13, 117:18 to 118:15.  DENNY was appearing at the conference as the face of CANONICAL and arriving in

---

[1] This Court may take judicial notice of pleadings and order in the Court's own files as well as from the original state court action.  See Fed.R.Evid. 201; U.S. ex. rel. Robinson Rancheria Citizens Council v. Borneo, 971 F.2d 244, 248 (9th Cir. 1992) ("[This court] may take notice of proceedings of other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."); Bennett v. Medtronic, Inc., 285 F.3d 801, 803 n.2 (9th Cir. 2002); In re Heritage Bond Litig., 546 F.3d 667, 670 n.1 (9th Cir. 2008).

[2] The deposition transcript pages attached hereto as exhibits are authenticated by way of the Reporter's Certificate included in each exhibit.

1   Las Vegas a few days early allowed him to be more rested and mentally sharp at the
2   conference and thus be a better recruiter.  Id. at 119:7 to 120:15.  CANONICAL's FRCP
3   30(b)(6) witness, Andrew Sinclair, admitted that he was not aware of any facts that
4   indicated that DENNY's testimony that it was CANONICAL that chose DENNY's dates
5   for travel and that he was scheduled to arrive in Las Vegas by CANONICAL on an
6   earlier date in order to acclimate him to the time change was not accurate.  See Relevant
7   Portions of Deposition of Andrew Sinclair, taken September 5, 2023, which are attached
8   hereto as Exhibit "B", 57:4 to 58:2, 70:10-15, 73:10-20.

9         DENNY's contract with CANONICAL also provided that CANONICAL would
10  reimburse DENNY for "all reasonable traveling, hotel and other expenses properly
11  incurred by [DENNY] in or about the due performance of [DENNY's] duties . . . ."  See
12  ECF No. 40, p.5.  CANONICAL paid for DENNY's car rental and hotel bill for his entire
13  stay in Las Vegas, including the days before the start of the conference.  See Exhibit "B"
14  at 72:7-12.  If DENNY submitted to CANONICAL a receipt for an expense that was not
15  related to his work, such as a personal expense, that receipt would be rejected and
16  DENNY would not be reimbursed for that expense.  See Exhibit "A" at 27:2 to 28:3.
17  CANONICAL reimbursed DENNY for all the receipts for the meals he had in Las Vegas
18  the weekend before the conference began.  Id. at 120:16-20.  In particular,
19  CANONICAL's 30(b)(6) witness testified that the receipt for DENNY's dinner prior to
20  the subject accident had been reviewed by CANONICAL and approved.  See Exhibit
21  "B" at 67:23 to: 68:21.

22        At the time of the subject accident, DENNY was driving back to his hotel after
23  getting up some food.  See Relevant Portions of Vol. 1 of DENNY's deposition, taken
24  October 15, 2021, which is attached hereto as Exhibit "C", 31:24-25.  It was in the early
25  morning hours, but DENNY was "running on a slightly different clock" given the eight
26  hour time difference.  Id. at 25:23 to 26:2.  CANONICAL placed no limitations on
27  DENNY as to what times when or locations where he could eat a meal that was subject
28  to reimbursement.  See Exhibit "B" at 60:4-13, 61:25 to 62:2.  CANONICAL's 30(b)(6)

1  witness also testified CANONICAL expected that, during this business trip, DENNY
2  would travel to get food and then return to his hotel room.  Id. at 62:15-21.

### III.
### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a).  The substantive law governing a matter determines which facts are material to a case.  Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S. Ct. 2505, 92 L.Ed. 2d 202 (1986).  When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.  Gonzales v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014).  If the movant has carried its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L.Ed. 2d 686 (2007) (alteration in original) (internal quotation marks omitted).  The nonmoving party may not merely rest on the allegations of his pleadings; rather, he must produce specific facts – by affidavit or other evidence – showing a genuine issue of fact.  Anderson, 477 U.S. at 256.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for the purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order."  Heinemann v. Satterberg, 731 3d 914, 915 (9th Cir. 2013) (citing FRCP 56(e)).  It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage.  Zetwick v. County of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

# IV.

# LEGAL ARGUMENT

**A.    DENNY and AVIS have standing to oppose CANONICAL's Motion**

DENNY and AVIS believe that CANONICAL will argue that they do not have standing to oppose CANONICAL's Motion for Summary Judgment as they are co-defendants and have not asserted a cross-claim against CANONICAL.  First of all, there is nothing in the language of FRCP 56 or the local rules that limit who can oppose a motion for summary judgment.  See Coleman v. Anco Insultations, Inc., 19 F.Supp.3d 608, 610 fn.4 (M.D. La. 2016).

Also, in the Ninth Circuit, a defendant is allowed to oppose a motion for summary judgment filed by a co-defendant.  Hoover v. Switlik Parachute Co., 663 F.2d 964 (9th Cir. 1981).  Furthermore, it is not required that a defendant have filed a cross-claim against a moving co-defendant in order to have standing to file an opposition.  Instead, standing of a co-defendant to file an opposition is present if not allowing an opposition could have adverse consequences to the non-moving defendant or the non-moving defendant could be aggrieved by the result of the co-defendant's motion.  See D.F. Sikorsky Aircraft Corp., 2017 U.S. Dist LEXIS 179651, 2017 WL 4922814 (S.D. Cal. 2017), *37; see also Indep. Living Ctr. of S. Cal. v. City of Los Angeles, 205 F.Supp.3d 1105, 1109 (C.D. Cal. 2016) (allowing co-defendant to file an opposition even if there is no cross-claim where it has a strong interest in the outcome of the motion).  Courts have shown concern with allowing a co-defendant to oppose a motion for summary judge if the plaintiff has not also filed an opposition, but it is DENNY and AVIS' belief that Plaintiff will be filing an opposition to CANONICAL's motion.

DENNY and AVIS certainly face possible adverse consequences if CANONICAL prevails on its motion.  Plaintiff has alleged over a million dollars in past medical specials and over five million dollars in future medical specials.  If CANONICAL were to be dismissed from this case. DENNY and AVIS may face having to bear all of Plaintiff's alleged damages rather than sharing the burden with CANONICAL.

1  Accordingly, DENNY and AVIS have standing to file this Opposition.

2  **B.     DENNY was in the course and scope of his employment with CANONICAL**

3  An employer may be held vicariously liable for the actions of an employee who is under the control of the employer and acting within the scope of employment. Evans v. Southwest Gas, 108 Nev. 1002, 1005, 842 P.2d 719, 721 (1992), citing Molino v. Asher, 96 Nev. 814, 817, 618 P.2d 878, 879 (1980). Generally, an employee who is travelling to or from work is outside the scope of employment unless the employee is performing an errand for the employer or otherwise conferring a benefit upon the employer. Id. at 1006. While DENNY was not performing an errand for CANONICAL, DENNY was conferring a benefit upon CANONICAL.

Cases interpreting the "incidental benefit" exception state, "acts necessary for the comfort, convenience, health, and welfare of the employee at work, though strictly personal to himself and not acts of service, do not take him outside the scope of his employment. See Heyer v. Sosa, 2023 Cal. Super. LEXIS 63624 (August 8, 2023) *3-4 (finding employee was in course and scope of employment though he was on his meal break and headed to 7-Eleven at time of accident), quoting Lazar v. Thermal Equipment Corp., 148 Cal.App.3d 458, 465 (1983). Instructive on this issue is Moradi v. Marsh USA Inc., 219 Cal.App.4th 886, 162 Cal.Rptr.3d 280 (Ct. App. Cal. 2013). Moradi involved a salesperson (Bamberger) for an insurance broker (Marsh) who was driving home at the end of her work day and planned to stop to get some frozen yogurt and then go to a yoga class before going home but got into a motor vehicle accident along the way. Id. at 891-92. The plaintiff sued both Bamberger and her employer, Marsh. Id. at 893. The employer, Marsh, filed a motion for summary judgment on the grounds that its employee, Bamberger, was neither at work, not working, or pursuing any task on behalf of her employer but instead was pursuing personal interests, namely going to a yoga class and stopping for yogurt on the way. Id. The trial court granted Marsh's motion and the plaintiff appealed. Id. at 894.

The appellate court reversed the trial court. Id. at 912. The appellate court noted

7

that a well-known exception to the coming and going rule was where the employer received an incidental benefit, and so the key inquiry was whether there was such an incidental benefit. Id. at 895. It also stated, "Categorization of an employee's action as within or outside the scope of employment thus begins with a question of foreseeability, i.e., whether the accident is part of the inevitable toll of a lawful enterprise." Id. at 901. The issue of foreseeability was elaborated upon as follows:

> However, "foreseeability" in this context must be distinguished from "foreseeability" as a test for negligence. In the latter sense "foreseeable" means a level of probability which would lead a prudent person to take effective precautions whereas "foreseeability" as a test for respondeat superior merely means that in the context of a particular enterprise an employee's conduct is **not so unusual or startling** that it would seem unfair to include the loss resulting from it among other costs of the employer's business.
>
> One traditional means of defining this foreseeability is seen in the distinction between minor 'deviations' and substantial 'departures' from the employers business. The former are deemed foreseeable and remain within the scope of employment; the latter are unforeseeable and take the employee outside the scope of his employment.
>
> . . . The question is often one of fact, and the rule is now established that only a **substantial** deviation or **departure** takes the employee outside the scope of his employment.

Id. (emphases in original). This same foreseeability analysis regarding vicarious liability is cited by the Nevada Supreme Court in Wood v. Safeway, Inc., 121 Nev. 724, 740 fn. 53, 121 P.3d 1026, 1036 fn. 53 (2005).

> Moradi further states:
>
> More recently, the test was stated in this way: "In assessing whether an employee's wrongful act was required by or incidental to his duties, the law defines occupational duties broadly. The fact that an employee is not engaged in the ultimate object of his employment does not preclude attribution of liability to an employer. . . . **For example, acts necessary to the comfort, convenience, health, and welfare of the employee while at work, though strictly personal to himself** and not acts of service, do not take him outside the scope of his employment."

Moradi, supra at 901-02 (emphasis in original). The appellate court stated "we can think of no conduct more predictable than an employee's stopping at a store to purchase a few items on the way home" and so the employee's stops before heading

8

1  home were not unusual or startling deviations but instead just minor, foreseeable
2  deviations that did not take the employee outside the scope of employment and the
3  doctrine of respondeat superior would apply. Id. at 902-06.
4     At the time of the subject accident, DENNY was driving back to his hotel after
5  getting some food. See Exhibit "C" at 31:24-25. Getting food was certainly necessary
6  for the comfort, convenience, health, and welfare of DENNY. CANONICAL also
7  received an incidental benefit from DENNY getting food, as the Court can take judicial
8  notice that had DENNY not eaten prior to the start of the conference on Monday,
9  December 2, 2019, DENNY would likely have been in poor physical condition at the
10 time of the conference. Furthermore, CANONICAL scheduled DENNY to arrive in Las
11 Vegas a few days before the conference as it provided CANONICAL the incidental
12 benefit of DENNY being fresher and more mentally sharp, and thus a better recruiter
13 than if had DENNY arrived in town just before the start of the conference. See Exhibit
14 "A" at 119:7 to 120:15.
15    DENNY's travel to get food and then return to his hotel was undisputedly
16 foreseeable, as CANONICAL's FRCP 30(b)(6) witness testified that CANONICAL
17 expected him to travel to get food and then return to his hotel during the course of his
18 business trip. See Exhibit "B" at 62:1-21. It was not unusual or startling that DENNY
19 went to go for food at such an early hour of the morning given that he had just arrived
20 from London, and so DENNY was still "running on a slightly different clock" at the
21 time. See Exhibit "C" at 25:23 to 26:2. In addition, CANONICAL's policy was that
22 DENNY would be reimbursed for only the expenses DENNY incurred in or about the
23 due performance of his job duties. See ECF No. 40, p.5. CANONICAL reviewed all of
24 the receipts submitted by DENNY regarding his food and meals eaten during the
25 weekend before the start of the conference and approved and reimbursed DENNY for
26 all of them. See Exhibit "B" at 67:23 to: 68:21. CANONICAL's payment of DENNY's
27 meals is an admission by CANONICAL that such meals were incurred in or about the
28 due performance of his job duties.

9

1  Whether an employee was acting within the course and scope of his employment
2  at the time of the accident is generally a question of fact.  See Molino v. Asher, supra at
3  818.  However, DENNY and AVIS believe that the undisputed evidence presented by
4  them in this Opposition is sufficient to establish that DENNY was working in the course
5  and scope of his employment with CANONICAL, especially given that the Court is to
6  view all facts and draws all inferences in the light most favorable to DENNY and AVIS,
7  as they are nonmoving parties.  Gonzales v. City of Anaheim, supra.  At the very least,
8  the evidence presented by DENNY and AVIS is sufficient to create a genuine issue of
9  material fact, which renders summary judgment in favor of CANONICAL
10 inappropriate.  FRCP 56(a).

11 An additional basis for finding that DENNY was in course and scope of his
12 employment with CANONICAL at the time of the accident is because the reason he was
13 in Las Vegas at the time of the subject accident was because CANONICAL had him
14 travel here from London pursuant to his work duties.  See ECF No. 40 at 5 and 7.  The
15 Ninth Circuit has held "if the employee's work created necessity for travel, he was in
16 the course of employment, even if he was at times serving his own purpose."  Berrettoni
17 v. U.S., 436 P.2d 1372, 1374 (9th Cir. 1970).  Only if the work had no part in creating the
18 need for travel would the employee's travel be outside the course and scope of his
19 employment.  Id.

20 Nevada has codified this majority rule in NRS 616B.612.  As stated in Buma v.
21 Providence Corp. Dev., 135 Nev. 448, 453 P.3d 904 (2019):

> Under the NIIA, "Travel for which an employee receives wages shall, for the purposes of [the act], be deemed in the course of employment."  NRS 616B.612(B).  Consistent with this statute is the majority rule that traveling employees are in the course of employment continuously during their business trips, except during distinct departures on personal errands.  Such an employee's injuries arising out of travel- or work-related risks – including those associated with meeting basic personal needs (like sleeping in hotels or eating in restaurants) and navigating hazards necessarily incidental to travel or work – are usually compensable unless an exception applies.  NRS 616B.612(B) codifies this majority rule.

28 Id. at 448.  Buma is a case involving a worker's compensation claim, and DENNY and

AVIS are not aware of a case from a Nevada state appellate court applying this rule in the context of a tort/respondeat superior case as of yet. However, the Nevada Supreme Court has recognized:

> Under the modern rationale for respondeat superior, the test for determining whether an employee is vicariously liable for the tortious conduct of his employee is closely related to the test applied in workers' compensation cases for determining whether an injury arose out of or in the course of employment.

Wood v. Safeway, Inc., supra at 740 fn. 53. As NRS 616B.612 is intended to be a codification of the majority rule, in light of Wood (as reflected in Berrettoni), it would be appropriate to apply the standard provided by that statute to tort/respondeat superior cases and not limit it to just worker's compensation cases.

## V.

## **CONCLUSION**

The facts presented by DENNY and AVIS establish that DENNY was in the course and scope of his employment with CANONICAL at the time of the subject accident. The fact that CANONICAL received incidental benefits from DENNY's actions were sufficient to characterize his action as being within the course and scope of his employment. Also, getting food and returning to his hotel was reasonable, foreseeable, and necessary for DENNY's convenience, comfort, health, and welfare, and so DENNY's actions remained within the course and scope of his employment. Furthermore, CANONICAL's payment of all of DENNY's pre-accident travel expenses, including his food, is an admission that CANONICAL recognized that DENNY was acting with the course and scope of his employment at the time of the subject accident, as CANONICAL's policy was to reimburse employees for expenses incurred regarding the performance of work duties. At the very least, the facts presented by AVIS and DENNY are sufficient to create a genuine issue of material fact, which renders summary judgment in favor of CANONICAL inappropriate. Thus, it is appropriate to deny CANONICAL's Motion for Summary Judgment as relates to its potential liability based on respondeat superior.

1  WHEREFORE, Defendants GORDON DENNY and PV HOLDING CORP. respectfully request that CANONICAL GROUP LIMITED's Motion for Summary Judgment be DENIED to the extent noted above.

DATED this 5th day of January, 2024.

PYATT SILVESTRI

/s/ Robert P. Molina, Esq.
ROBERT P. MOLINA, ESQ., SBN 6422
701 Bridger Avenue, Suite 600
Las Vegas, Nevada 89101
Attorneys for Defendants
GORDON DENNY and PV HOLDING CORP.

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the law offices of PYATT SILVESTRI, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made. I also further certify that the service of **DEFENDANTS GORDON DENNY AND PV HOLDING CORP.'S PARTIAL OPPOSITION TO CANONICAL GROUP LIMITED'S MOTION FOR SUMMARY JUDGMENT** was made on the 5th day of January, 2024, on all parties in this action, by causing a true copy thereof to be distributed via the CM/ECF system to the following parties:

| | |
|---|---|
| Ramzy Paul Ladah, Esq.<br>LADAH LAW FIRM<br>517 S. Third Street<br>Las Vegas, Nevada 89101<br>Ramzy@ladahlaw.com<br>litigation@ladahlaw.com<br>Attorneys for Plaintiff<br>Ronald Carpenter, Jr. | Kristian Lavigne, Esq.<br>Jeffrey Lavigne, Esq.<br>THE LAW OFFICE OF KRISTIAN<br>LAVIGNE AND ASSOCIATES, P.C.<br>8064 W. Sahara Avenue # 102<br>Las Vegas, Nevada 89117<br>jeff@myrebellawyer.com<br>Attorneys for Plaintiff<br>Ronald Carpenter, Jr. |
| Shannon Pierce, Esq.<br>Wade Beavers, Esq.<br>FENNEMORE CRAIG, P.C.<br>7800 Rancharrah Parkway<br>Reno, Nevada 89511<br>SPierce@fennemorelaw.com<br>WBeavers@fennemorelaw.com<br>Attorneys for Defendant<br>Canonical Group Limited | Gary Guelker, Esq.<br>RESNICK & LOUIS, P.C.<br>8925 West Russell Road, Suite 220<br>Las Vegas, Nevada 89148<br>gguelker@rlattorneys.com<br>Attorney for Intervenor<br>Allstate Insurance Company |

/s/ Barbara Abbott
An Employee of PYATT SILVESTRI