# EXHIBIT B

# EXHIBIT B

Case 2:23-cv-00208-RFB-NJK   Document 43-2   Filed 01/05/24   Page 2 of 13

Andrew Sinclair                                          Ronald Carpenter, Jr. v. Gordon Denny, et al.

Page 1

```
 1                 UNITED STATES DISTRICT COURT

 2                      DISTRICT OF NEVADA

 3

 4   RONALD CARPENTER, JR., an          )
     individual,                        )
 5                                      )
                                        )
 6              Plaintiff,              )
                                        )
 7   vs.                                )CASE NO.:
                                        )2:23-CV-00208-RFB-NJK
 8   GORDON DENNY, an individual;       )
     PV HOLDING CORP. dba AVIS CAR      )
 9   RENTAL, a foreign corporation;     )
     CANONICAL GROUP LIMITED, a         )
10   foreign corporation; DOES I        )
     through V, inclusive and ROE       )
11   CORPORATIONS II through V,         )
     inclusive,                         )
12                                      )
                                        )
13              Defendants.             )
     _____)
14                                      )
     ALLSTATE INSURANCE COMPANY,        )
15                                      )
                Intervenor.             )
16   _____)

17         VIDEOTAPED DEPOSITION OF ANDREW SINCLAIR

18            30(b)(6) for Canonical Group Limited

19            Taken on Tuesday, September 5, 2023

20                       At 1:11 p.m.

21               By a Certified Court Reporter

22         Taken remotely via Zoom Videoconference

23

24   Reported by: Johanna Vorce, CCR No. 913

25   Job No.: 54341, Firm No. 116F
```

Case 2:23-cv-00208-RFB-NJK   Document 43-2   Filed 01/05/24   Page 3 of 13

Andrew Sinclair                                   Ronald Carpenter, Jr. v. Gordon Denny, et al.

Page 57

 1   documents that addressed those arrangements specifically?
 2       A.   Just the -- the travel booking, so the flight, the
 3   flight booking, and the expense reports.
 4       Q.   Okay.  So do you know who chose the dates of
 5   Mr. Denny's travel?  Was that chosen by Mr. Denny himself,
 6   or was that chosen by someone at Canonical?
 7       A.   I -- I don't know.
 8       Q.   All right.  So during -- in Mr. Denny's
 9   deposition, he testified that it was chosen by him -- by
10   Canonical, his dates of travel.
11            Have you -- are you aware of any facts to indicate
12   that that is not true?
13       A.   It's -- I mean, I think his purpose was to attend
14   this conference, so that's the -- the dates of the
15   conference are going to be the driving factor there.
16   Usually when we book travel beyond that, the -- the -- sort
17   of when to arrive and when to leave are decisions made
18   between the employee and the manager of the employee, so --
19   but yeah, and so I don't know exactly what transpired
20   between Mr. Denny and his manager.
21       Q.   Okay.  And just so it's clear, I want to just make
22   sure that -- I'll ask my question again.
23            So are you aware of any facts that indicate that
24   Mr. Denny's testimony in this regard is not accurate?
25            MR. BEAVERS:  Objection, asked and answered.

Case 2:23-cv-00208-RFB-NJK   Document 43-2   Filed 01/05/24   Page 4 of 13

Andrew Sinclair                                      Ronald Carpenter, Jr. v. Gordon Denny, et al.

Page 58

```
 1            THE WITNESS:  No.  I have no reason to think his
 2   testimony is not accurate.
 3   BY MR. MOLINA:
 4       Q.   Okay.  Now, I wanted to talk about Mr. Denny's
 5   expenses, in as far as for what he was permitted.
 6            Now, were there -- or was there a particular
 7   policy of Canonical's at the time of the subject accident
 8   that dictated what expenses Mr. Denny was allowed to seek
 9   reimbursement for and which ones he was -- he was not?
10       A.   Yes.
11       Q.   Okay.  And so could you just -- is that writ- --
12   in a written form, or was that just an oral limitation?
13       A.   I don't know for certain.  Today it's written, but
14   I don't know.  It -- they would -- there was a written
15   policy at the time.  I don't know how specific it was about
16   certain things.
17       Q.   Okay.  What can you state to a reasonable degree
18   of certainty as to what the policy was, as far as for
19   limitations on expenses?
20       A.   There would have been limits on the amount you
21   could expense for a meal.
22       Q.   Okay.  Do you have a -- a rough estimate as to
23   what that amount was?
24       A.   Yes.  I mean, today's policy, I think, is $60 for
25   dinner and 35 or 25 or something for lunch, so it would have
```

Case 2:23-cv-00208-RFB-NJK   Document 43-2   Filed 01/05/24   Page 5 of 13

Andrew Sinclair                                  Ronald Carpenter, Jr. v. Gordon Denny, et al.

Page 60

 1      A.   Yeah.  Or if you're at a conference and there's a
 2   lunch included in the conference or if you're -- you're at a
 3   hotel and there's a breakfast included in the hotel.
 4      Q.   Okay.  And so was there any limitations as to,
 5   let's say, the -- the time that you had a particular meal?
 6   Meaning, let's suppose that you ate only two meals on a
 7   particular day, but, for whatever reason, you decide to take
 8   a very either early or late lunch, and then you decided to
 9   take a really early or late dinner.  Did -- did the time of
10   the meals matter?
11      A.   No, that's not in today's policy, and so,
12   therefore, I think it probably wasn't in the policy back
13   then either.
14      Q.   Okay.  And so other than meals, were there any
15   other expenses that person could be -- could be reimbursed
16   for?
17      A.   Yeah.  Things like local transportation, taking an
18   Uber, for example.
19           I noticed in Mr. Denny's expense report that he
20   needed to do some shipping.  He shipped some materials
21   from -- from the event back to the Canonical office.  So
22   other incidental expenses would be reimbursable.
23      Q.   Okay.  And so on the subject trip, his -- his
24   rental car was prepaid before the trip, correct?
25      A.   I don't know exactly when it was paid, but it

Case 2:23-cv-00208-RFB-NJK   Document 43-2   Filed 01/05/24   Page 6 of 13

Andrew Sinclair                                          Ronald Carpenter, Jr. v. Gordon Denny, et al.

Page 61

1   appeared to me -- I -- I noticed that it wasn't in his
2   expense report, which indicates to me that it was paid by
3   the travel agency.
4       Q.   Okay.  And so if an employee was going to have a
5   rental car, did Canonical make sure that the employee had a
6   valid driver's license before going on the trip?
7            MR. BEAVERS:  Objection, form.
8            THE WITNESS:  I don't think we would suspect that
9   an employee who was planning to rent a car wasn't able to
10  drive it.
11  BY MR. MOLINA:
12      Q.   Okay.  Now, as far as for any trips -- I'm sorry.
13           So when you had Mr. Denny coming to the United
14  States and he had a rental car, you would expect that when
15  he was in Las Vegas, he would be expected to be eating,
16  correct?
17           MR. BEAVERS:  Objection, form.
18           THE WITNESS:  Yes.
19           THE COURT REPORTER:  I'm sorry, he would be
20  expecting to what?
21  BY MR. MOLINA:
22      Q.   He would be expected to be eating at some point,
23  correct?
24      A.   Yes.
25      Q.   All right.  And there was -- he -- was there any



Case 2:23-cv-00208-RFB-NJK   Document 43-2   Filed 01/05/24   Page 7 of 13

Andrew Sinclair                              Ronald Carpenter, Jr. v. Gordon Denny, et al.

Page 62

1   limitations where he could eat?
2       A.   No.
3       Q.   All right.  And so then it was expected by
4   Canonical that Mr. Denny would be having to drive from where
5   he was eating to his hotel; is that correct?
6            MR. BEAVERS:  Objection, form.
7            THE WITNESS:  I don't think we -- I -- I don't
8   think the company thought about the logistics of people
9   getting meals in different places.
10           Many places we travel don't -- you don't need a
11  car to get around or to get a meal, so I don't know that we
12  assumed there was -- there was driving for the purpose of
13  eating.
14  BY MR. MOLINA:
15      Q.   No.  But you would agree that there -- there
16  was -- Canonical expected that there's a possibility that
17  during his trip he would be having to travel to get food and
18  then return to his hotel room; is that correct?
19           MR. BEAVERS:  Objection, asked and answered.
20           THE WITNESS:  I think we would expect that he may
21  do that.  I don't know that he would have -- had to have
22  done that.  I -- I notice that the other expenses on that
23  trip were at the hotel for meals so --
24  BY MR. MOLINA:
25      Q.   In prior trips that Mr. Denny had, there were

Case 2:23-cv-00208-RFB-NJK   Document 43-2   Filed 01/05/24   Page 8 of 13

Andrew Sinclair                                    Ronald Carpenter, Jr. v. Gordon Denny, et al.

Page 67

 1   submit something, right?
 2           So, I mean, unless everyone is talking about all
 3   these meals they're consuming and not claiming expenses,
 4   I -- I don't know what happens.  I don't know what's common.
 5       Q.  Okay.  And -- and I -- and I apologize.  I -- I --
 6   this was worded just a little bit different from the prior
 7   question.
 8           But are -- are you aware of any receipts that
 9   Mr. Denny submitted for the subject trip to Las Vegas that
10   were rejected and -- and not just rejected temporarily but
11   rejected outright -- I'm sorry, not outright, but
12   permanently?  Meaning, even after trying to resubmit, that
13   they still were not accepted?
14       A.  No.
15       Q.  And if there were any such rejections, would that
16   be noted in that reimbursement documentation that's in his
17   file?
18       A.  Yes, I believe so.  The -- the expense report has
19   an action log, as part of it, with all the things that
20   happened starting from the submission of the report.  So you
21   would see a rejection or a comment if something was rejected
22   and then changed and resubmitted.
23       Q.  Okay.  And so on the date of the accident, there
24   was a receipt that was submitted by Mr. Denny for a meal at
25   Joyful House that had some orange chicken and some wine.

Case 2:23-cv-00208-RFB-NJK   Document 43-2   Filed 01/05/24   Page 9 of 13

Andrew Sinclair                                    Ronald Carpenter, Jr. v. Gordon Denny, et al.

Page 68

 1        That was a receipt that was accepted by -- by
 2   Canonical, correct?
 3        A.   Yes.
 4        Q.   Okay.  And I think that the receipt indicated that
 5   the meal -- I think that the order was in, I believe,
 6   something close to 12:30 at night, and I can't remember
 7   what -- what time the -- the -- the check was closed.
 8        But given the time of the order, was that any
 9   basis for rejecting that -- that -- that receipt?
10        A.   Yes.  I think it should have been rejected.  It
11   was on a weekend that wasn't part of his travel.  His travel
12   day was the Friday.
13        Q.   And I apologize, but you said that should have
14   been rejected?
15        A.   Yes.
16        Q.   Okay.  But do -- are you aware of any indication
17   that anyone at Canonical -- I'm sorry.
18        This -- this receipt was actually reviewed though,
19   correct?
20        A.   Yes.  It appears it was reviewed and approved by
21   Matt Ellis.
22        Q.   Okay.  And so are you saying that you -- what is
23   your basis for saying that -- I'm sorry.
24        Is there any indication that Mr. Ellis' decision
25   was questioned by anyone at Canonical?

Andrew SinclairRonald Carpenter, Jr. v. Gordon Denny, et al.

Page 70

```
 1   time.  That -- that's a relatively common thing at
 2   Canonical.  You can add personal travel on the front or back
 3   of other trips.  And our policy is that we permit that, but
 4   we don't cover expenses for that.
 5   BY MR. MOLINA:
 6        Q.   And did you see anything documenting that
 7   Mr. Denny was asking for personal travel to be added to his
 8   trip?
 9        A.   No.
10        Q.   And, in fact, I think you already testified that
11   you have no documentation that -- that -- that contradicts
12   his testimony that it was Canonical who told him that he had
13   to leave on the day that he did and arrive in Las Vegas on
14   the day he did, correct?
15        A.   Yes.
16        Q.   All right.  And so would you agree that it would
17   not be in Canonical's interest for Mr. Denny not to eat for
18   two days prior to attending the conference on that Monday?
19             MR. BEAVERS:  Objection, form.
20             THE WITNESS:  Yes, it would not be in Canonical's
21   interest for someone to -- for an employee to not eat for
22   two days.
23   BY MR. MOLINA:
24        Q.   Okay.  And so you would expect that -- that
25   Mr. Denny would be eating in Las Vegas in those two days
```

Case 2:23-cv-00208-RFB-NJK   Document 43-2   Filed 01/05/24   Page 11 of 13

Andrew Sinclair                                Ronald Carpenter, Jr. v. Gordon Denny, et al.

Page 72

1  team now that does the further review of expenses, so -- and
2  she said, "This is the kind of thing -- the kind of reason
3  we have this extra step now, because managers are doing lots
4  of things and not specifically going through every line of
5  every expense report, and just they were approving things
6  that -- some of which shouldn't have been approved."
7      Q.   You -- you agree, though, that Canonical paid for
8  Mr. Denny's hotel over that entire weekend, correct?
9      A.   Yes.
10     Q.   And you agree that they paid for his rental car
11 over the entire weekend, correct?
12     A.   Yes.
13     Q.   Do you believe those reimbursements were also
14 improper?
15     A.   If the travel was -- I -- I don't know the exact
16 reason for him being there that weekend.  If he was there
17 because he wanted to be there ahead of time, then, yes, I
18 think those were improper.  And -- and we have a
19 mechanism -- we have a mechanism for negative expense,
20 because these things are centrally booked, where if you want
21 to add travel on the front or back of a trip, you can do so.
22 You get a -- you get the travel agent to provide you with
23 the flight cost it would have been, and if it's greater, and
24 the hotel rooms, obviously.  And then you can negative
25 expense those and -- and pay those yourself and reimburse

Case 2:23-cv-00208-RFB-NJK   Document 43-2   Filed 01/05/24   Page 12 of 13

Andrew Sinclair                                          Ronald Carpenter, Jr. v. Gordon Denny, et al.

Page 73

1  the company for those.
2       Q.   You reviewed Mr. Denny's deposition, correct?
3       A.   Yes.
4       Q.   Okay.  Did you see the portion where he testified
5  that the reason Ms. Woods instructed him to go on Friday, as
6  opposed to some other time, was to give him time to
7  acclimate to the eight-hour time change before he had to
8  appear for his conference?
9       A.   Yes, I saw that.
10      Q.   Okay.  And do you have any reason to disagree with
11 that testimony, that is that's why he was instructed to go
12 there on Friday as opposed to Sunday?
13      A.   No.
14      Q.   Okay.  And so you would agree that based on that
15 testimony, he didn't choose to go there for personal
16 reasons; he was instructed to go there for -- in order to
17 acclimate himself before the conference, correct?
18           MR. BEAVERS:  Objection, form.
19           THE WITNESS:  That's -- that was his testimony,
20 yeah.  I have no reason to believe it's not true.
21 BY MR. GUELKER:
22      Q.   Okay.  And when you spoke with the supervisor
23 to -- to question legitimacy of the -- of the meal expenses,
24 did you inform him that the reason Mr. Denny stated he was
25 there so early was to allow him to accli- -- so that he

Case 2:23-cv-00208-RFB-NJK   Document 43-2   Filed 01/05/24   Page 13 of 13

Andrew Sinclair                                    Ronald Carpenter, Jr. v. Gordon Denny, et al.

Page 82

1                    REPORTER'S CERTIFICATE

2   STATE OF NEVADA   )
                      )  SS
3   COUNTY OF CLARK   )

4

5           I, Johanna Vorce, a duly certified court reporter licensed in and for the State of Nevada, do hereby certify:

6

7           That I reported the taking of the deposition of the witness, ANDREW SINCLAIR, at the time and place aforesaid;

8

9           That prior to being examined, the witness was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth;

10

11          That I thereafter transcribed my shorthand notes into typewriting and that the typewritten transcript of said deposition is a complete, true, and accurate record of

12  testimony provided by the witness at said time to the best of my ability.

13

14          I further certify (1) that I am not a relative, employee, or independent contractor of counsel of any of the parties; nor a relative, employee or independent contractor

15  of the parties involved in said action; nor a person financially interested in the action; nor do I have any

16  other relationship with any of the parties or with counsel of any of the parties involved in the action that may

17  reasonably cause my impartiality to be questioned; and (2) that transcript review pursuant to FRCP 30(e) was not

18  requested.

19          IN WITNESS WHEREOF, I have hereunto set my hand in the County of Clark, State of Nevada, this 18th day of

20  September, 2023.

21

22
                                          _____
23                                        Johanna Vorce, CCR No. 913

24

25