**RAMZY PAUL LADAH**
Nevada Bar No. 11405
**LADAH LAW FIRM**
517 S. Third Street
Las Vegas, NV 89101
T: 702.252.0055
*Attorneys for Plaintiff Ronald Carpenter*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| RONALD CARPENTER, JR., an individual;<br><br>Plaintiff,<br><br>vs.<br><br>GORDON DENNY, an individual; PV HOLDING CORP. dba AVIS CAR RENTAL, a foreign corporation; CANONICAL GROUP LIMITED, a foreign corporation; DOES I through V, inclusive and ROE CORPORATIONS II through V, inclusive;<br><br>Defendants. | CASE NO.: 2:23-CV-00208-RFB-NJK<br><br>**Plaintiff's Response to Defendant Canonical Group Limited's Motion for Summary Judgement** |
| ALLSTATE INSURANCE COMPANY,<br><br>Intervenor. | |

Plaintiff RONALD CARPENTER, JR. ("Plaintiff"), by and through his undersigned counsel of record, hereby responds to Defendant CANONICAL GROUP LIMITED's ("CGL") Motion for Summary Judgment (ECF No. 40).

This Response is supported by the following memorandum of points and authorities, the pleadings and papers on file herein, declarations and/or affidavits attached hereto, and any oral argument at the time of hearing on this matter, if any.

. . .

. . .

. . .

. . .

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. STATEMENT OF UNDISPUTED FACTS

- In or around April, 2018, Gordon Denny ("Denny") was hired as a recruiter by Canonical Group Limited ("CGL"), a London-based technology company. (ECF 40-2, at § 3.1).

- Denny was hired by CGL as a salaried employee. *Id.* at § 5.1.

- Denny's employment contract with CGL provided Denny was "to travel on any [CGL] business (both within the United Kingdom or abroad) as may be required for the proper performance of [his] duties." *Id.* at § 4.3.

- To this end, Denny traveled quite frequently as part of his duties with CGL, including several trips to attend business functions in the United States. (**Exhibit 1** - Deposition Transcript of Gordon Denny, Vol. 2, 20:19-21:14).

- Denny's employment contract with CGL provided as follows with respect to travel expense reimbursement:

    > The Company shall reimburse you all reasonable travelling, hotel and other expenses, properly incurred by you in or about the due performance of your duties, provided always that you shall provide reasonable evidence of all such expenditure as required by the Company from time to time.

    (ECF 40-2, at § 5.4).

- If Denny submitted a receipt for reimbursement for a personal expense or any expense unrelated to his work, CGL would deny reimbursement. (Ex. 1 at 27:2-28:3).

- Denny was directed by CGL to attend the Amazon Web Services conference ("AWS conference") in Las Vegas, Nevada, scheduled to commence on December 2, 2019. (Ex. 1 at 116:18-21) (Q: "And you agree you were in Las Vegas because you were sent to Las Vegas at the direction of Canonical; correct? A: "Yes,"). Andrew Sinclair, CGL's Rule 30(b)(6) corporate representative, confirmed Denny was directed by CGL to attend the conference in Las Vegas. (**Exhibit 2** - Deposition Transcript of Andrew Sinclair, 30:2-31:17).

- Denny would not have traveled to Las Vegas on this occasion had he not been directed to do so by CGL. (Ex. 1 at 116:22-25) (Q: And if it wasn't for Canonical telling you to go to Las Vegas you wouldn't have been there in the first place?  A: No.).

- Though the AWS conference was not scheduled to begin until Monday, December 2, 2019, Denny flew to Las Vegas from London on Friday, November 29, 2019.  Before boarding his flight, Denny ordered a hamburger and a "Double Bacardi Superior" cocktail from an airport restaurant. (ECF 40-8, at CGL_000178).  Denny subsequently submitted his receipt, and was reimbursed by CGL, for this order. (ECF 40-8, at CGL_000172) (Ex. 1 at 80:9-15) (Ex. 2 at 65:4-8).

- The decision to arrive in Las Vegas three days before the AWS conference was not made by Denny, but by his supervisor at CGL. *Id.* at 84:7-13; 117:18-118:8 (Q: So not only was Canonical aware that you were going to be in Vegas the weekend before the convention, it actually made a decision to send you there the weekend beforehand; correct?  A: Correct, yeah.).

- Denny's supervisor directed Denny to travel to Las Vegas three days before the conference to ensure he would be sufficiently rested and acclimated to the eight-hour time difference. *Id.* at 84:7-13; 118:4-119:2 (Q: We talked about how you could have made it on time for the conference if you flew in the 30th, but why the 29th?  Is that a date you picked?  A: No, Erica picked it.  She thought I needed a bit of time to adjust to the changing time.).

- Denny agreed it was important for him to appear "well-rested [and] sharp" at the AWS conference, because he was appearing as "sort of the face of the company[.]" *Id.* at 119:3-120:2.

- Denny agreed that traveling to Las Vegas three days early to acclimate, he was "more well rested and mentally more sharp" at the conference, which would not have been the case had he flown in later. *Id.* at 120:3-8 (Q: So would you agree that getting to go to Vegas early, three days early to be able to acclimate allowed you to be more well rested

3

and mentally more sharp at that convention? A. Yeah. I mean, if I went on a Sunday, I would have been much wiped out.).

- After arriving in Las Vegas on Friday, November 29, 2019, Denny picked up an Avis rental car from the airport rental terminal. *Id.* at 74:14-75:3. While in Las Vegas, he stayed at the Palms Resort Casino. *Id.* at 68:6-9.

- CGL paid for, *inter alia*, Denny's airfare to and from Las Vegas, his Avis rental car, and his hotel accommodations at the Palms Resort Casino, for the entirety of Denny's stay in Las Vegas -- including the three days preceding the AWS conference. (Ex. 2 at 72:7-12) (**Exhibit 3** - Deposition of Gordon Denny, Vol. 1, at 22:17-23:1).

- Between midnight and 1:12 a.m. on Saturday, November 30, 2019 – Denny's first night in Las Vegas – Denny and another individual ate a meal at Joyful House restaurant on Spring Mountain Road. (ECF 40-8, at CGL_000182). There, Denny and his companion enjoyed orange chicken, fried rice, and three (total) glasses of wine. *Id.*

- Denny subsequently submitted a receipt for the meal from Joyful House to CGL, seeking reimbursement. *Id.* Denny's supervisor reviewed and approved the Joyful House expense, and Denny was reimbursed for the same. (ECF 40-8, at CGL_000172) (Ex. 2 at 67:23-68:21). No one at CGL questioned the decision to approve and provide reimbursement for this particular expense. (Ex. 2 at 68:24-69:1).

- At approximately 4:30 a.m. on Saturday, November 30, 2019, Denny left his hotel and drove his rental car to a fast-food restaurant. (Ex. 3 at 27:2-9). Despite the early morning hour, Denny emphasized he was not tired at all because he "had just come over from the U.K. so [he] was running probably on a slightly different clock." *Id.* at 25:3-26:7.

- After picking up fast-food and driving back to his hotel, Denny proceeded through the intersection of Flamingo Road and the I-15 off-ramp, whereupon he collided with Plaintiff's vehicle. (Ex. 1 at 63:1-64:5) (Ex. 3 at 27:2-9; 29:9-17).

4

- Canonical placed no time limitations on when Denny was permitted to eat while traveling for business, and expected there to be occasions where Denny would drive to get food and then return to his hotel room. (Ex. 2 at 61:25-62:21).

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

"Summary judgment is proper only where there is no genuine issue as to any material fact. All inferences that can be drawn from the supporting documents must be viewed in a light most favorable to the party opposing summary judgment." *S. E. C. v. Seaboard Corp.*, 677 F.2d 1297, 1298 (9th Cir. 1982). This is simply "an application of the more general rule that a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Id.*; quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2507 (1986).

Ultimately, where evidence is genuinely disputed on a particular issue – such as by conflicting testimony – the matter "is inappropriate for resolution on summary judgment." *Direct Techs., LLC v. Elec. Arts, Inc.*, 836 F.3d 1059, 1067 (9th Cir. 2016). Stated differently, "where the district court has made a factual determination, summary judgment cannot be appropriate." *Zetwick v. County of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017).

## III. LEGAL ARGUMENT

### A. Denny was in the Course and Scope of His Employment with CGL.

As demonstrated below, Denny was in the course and scope of his employment with CGL because: (1) case law addressing course and scope in the context of business travel confirms Denny's employment status; (2) his presence in Las Vegas at the time of the collision was directed by, and for the benefit of, CGL; and (3) Denny's conduct was foreseeable to CGL.

. . .

. . .

. . .

5

### 1. Law on course and scope involving business travel

CGL improperly asks this Court to evaluate course and scope through a traditional lens, inapposite hereto. In this case, determination of course and scope requires specific consideration of cases involving business travel; CGL's avoidance of any such analysis is revealing.

As venerably recognized in this Circuit, "if the employee's work creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own." *Berrettoni v. U.S.*, 436 F.2d 1372, 1374 (9th Cir. 1970). Inversely, the *Berrettoni* court explained:

> If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been cancelled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk.

*Id.*

In Nevada, this principle is codified under NRS 616B.612, the application of which was discussed in *Buma v. Providence Corporate Development*, 135 Nev. 448, 453 P.3d 904 (2019). In *Buma*, the Nevada Supreme Court explained:

> Under the NIIA, "Travel for which an employee receives wages shall, for the purposes of [the act], be deemed in the course of employment." NRS 616B.612(B). **Consistent with this statute is the majority rule that traveling employees are in the course of employment continuously during their business trips, except during distinct departures on personal errands. Such an employee's injuries arising out of travel- or work-related risks – including those associated with meeting basic personal needs (like sleeping in hotels or eating in restaurants) and navigating hazards necessarily incidental to travel or work – are usually compensable unless an exception applies.** NRS 616B.612(B) codifies this majority rule.

*Id.* at 448, 453 P.3d at 906 (emphasis added).

While *Buma* is a workers' compensation case, the Nevada Supreme Court has noted that "[u]nder the modern rationale for *respondeat superior*, the test for determining whether an employee is vicariously liable for the tortious conduct of his employee is closely related to the test applied in workers' compensation cases for determining whether an injury arose out of or in the course of employment." *Wood v. Safeway, Inc.*, 121 Nev. 724, 740 n. 53, 121 P.3d 1026, 1036 (2005); *see also*

*Harris v. Trojan Fireworks Co.*, 120 Cal. App. 3d 157, 162, 174 Cal. Rptr. 452, 455 (Ct. App. 1981) ("The propriety of applying the rationale of workers' compensation cases to third party injury fact situations and vice versa is now well established."); *Saudi Arabian Airlines Corp. v. Dunn*, 438 So. 2d 116, 122 (Fla. Dist. Ct. App. 1983) (finding workers' compensation standards "instructive in determining the limits of the common law doctrine of *respondeat superior*.").

Other courts in other circuits have imposed similar standards to the course and scope analysis for business travelers, commonly recognizing that the "general test cannot…be easily applied to an employee who has been sent out of town on a work assignment[.]" *Liberty Mutual Insurance Co. v. Electrical Systems, Inc.*, 813 F. Supp. 802, 806 (S.D. Fla. 1993). For example, Florida courts have long abided by the "*Doman* rule" -- a rule which closely mirrors the Nevada standard articulated in *Buma*, *supra*:

> The general rule is that an employee whose work entails travel away from the employer's premises is within the course of his employment at all times during the trip other than when there is a distinct departure for a non-essential personal errand. Injuries incurred during such travel and while attending to the normal creature comforts and reasonably comprehended necessities, as distinguished from those incurred in the course of amusement ventures are usually held to be compensable. Compensation in such areas is predicated on the premise that these acts do not take the employee out of the scope of employment because they are necessary to his health and comfort; that although such acts are personal to the employee, nevertheless they are expected incidents of his away-from-home employment and indirectly if not directly benefit the employer; that such acts, therefore, are not in fact deviations from the course of employment.

*N. & L. Auto Parts Co. v. Doman*, 111 So. 2d 270, 271-72 (Fla. Dist. Ct. App. 1959).

In the business travel context, factors such as the employee's compensation status while traveling, or the employer's payment of travel expenses, may also be considered. For instance, in *Ortega v. Pomerantz*, No. 3:18-CV-00451-HZ, 2019 WL 2288433, at *4 (D. Or. May 29, 2019), the defendant, Pomerantz, caused a car accident after traveling from her home in Wisconsin to Hood River, Oregon, where she was scheduled to begin work the following day. The plaintiff sued both Pomerantz and her employer, and the employer moved to dismiss. *Id.* Ultimately, the court denied the employer's motion, noting Pomerantz was "at least, in part, motivated by her service to [her employer] at the time of the collision" because she was traveling to her lodging,

7

gathering supplies and familiarizing herself with the area. *Id.* **"In addition, Defendant paid for her lodging as well as the cost of her travel and rental vehicle, lending further support for Plaintiff's allegation that Pomerantz was acting in the course and scope of her employment that day."** *Id.* (Emphasis added).

In *Farani v. File*, No. 3:16-CV-227 HTW-LRA, 2018 WL 2945432, at *1 (S.D. Miss. June 12, 2018), Leslie File, a Mississippi resident, was driving a rental car when she collided with the plaintiffs' vehicle while working in Montana as a traveling nurse for her employer, PrimeTime. File's living quarters, weekly per diem, and rental car expenses were all covered by PrimeTime. *Id.* The collision occurred when File was driving back to Montana after visiting friends in North Dakota, prompting PrimeTime to seek summary judgment on grounds File was outside the course and scope of her employment. *Id.* The court denied PrimeTime's motion, stating that too many questions of fact remained unanswered bearing relevance on the course and scope analysis. *Id.* at *2. For example:

- "Whether Defendant File was being paid for the days she travelled to North Dakota and back, including the day of the accident?"
- "Did the 'per diem' payment File received each week constitute payment for each day that she was on the Glendive, Montana assignment, thus bringing her within the scope of her employment for PrimeTime for every day that she was there?"
- "Did PrimeTime have reason to expect that such an act as the trip made by File, would be done?"
- "Given that File is required to be present for work at locations distant from her home, is she required to travel to various locations to obtain meals, to travel back and forth to her lodgings, and to engage in other activities?"

*Id.* at *2-3. After listing, *inter alia*, the above questions, the court concluded that "[m]any material facts remain in dispute, facts which must be resolved by the trier of fact." *Id.* at *3.

Applying the foregoing principles to the present analysis, summary judgment is clearly inappropriate. First, Denny's presence in Las Vegas was wholly necessitated by his work for

CGL. He did not travel to Las Vegas for any other reason. Had the AWS conference been cancelled, so too would have been Denny's trip. Thus, under *Berrettoni*, Denny's was firmly within the course and scope of his employment when the collision occurred. *See Berrettoni*, 436 F.2d at 1374. The continuous nature of Denny's course and scope status is further supported under Nevada law as confirmed in *Buma*. **The mere fact that Denny was conducting "basic personal needs (like sleeping in hotels or eating in restaurants)" when the collision occurred does not allow CGL to escape vicarious liability.** *Buma*, 135 Nev. at 448, 453 P.3d at 906 (emphasis added).

Moreover, it is undisputed that Denny was a salaried employee, and thus compensated by CGL for each day of his trip. It is also undisputed that Denny's airfare to Las Vegas, rental car, lodging, and dining expenses were all paid for by CGL. As indicated in *Ortega*, *Farani*, and elsewhere, these facts bear direct relevance on the course and scope analysis, and lend support for plaintiff's argument against summary judgment. *Cf. Kaye v. JRJ Invs., Inc.*, 134 Nev. 967, 2018 WL 6133883, at *2 (Nev. App. 2018) (affirming order granting employer's motion summary judgment, finding employer did not have control over employee during employee's break because employee "was not a salaried employee and was not paid during his break" and "did not receive reimbursement for travel"); *Kornton v. Conrad, Inc.*, 119 Nev. 123, 125, 67 P.3d 316, 317 (2003) (finding employee was not in course and scope, in part, because "[h]e was an hourly employee who received compensation only for actual time worked and did not receive reimbursement for travel expenses.").

2. <u>CGL as director and beneficiary of Denny's presence in Las Vegas</u>

As previously established, determination of course and scope in the context of an employee's travel activities hinges largely on whether said travel is necessitated by the employer. *Berrettoni*, 436 P.2d at 1374. Concurrently, the course and scope analysis should also consider whether the employee's conduct at the time of the tortious event conferred any benefit upon his employer. *Sharrock v. U.S.*, 673 F.3d 1117, 1121 (9th Cir. 2012) (*citing Blackman v. Great*

*American First Savings Bank,* 233 Cal.App.3d 598, 284 Cal.Rptr. 491 (1991)); *Sciacca v. Lipsky*, 869 F.2d 1498 (9th Cir. 1989).

Here, not only was Denny directed to travel to Las Vegas to attend the AWS conference by his employer, but his employer expressly directed him to travel to Las Vegas three days prior to the conference's commencement for the specific purpose adjusting to the change in time zone. (Ex. 1 at 84:7-13; 117:18-119:2). *Cf. Berry v. Golla*, No. CV H-17-2629, 2018 WL 1453275, at *1 (S.D. Tex. Mar. 23, 2018), *aff'd sub nom. Berry v. Missionaries of Co. of Mary, Inc.*, 770 F. App'x 716 (5th Cir. 2019) (granting summary judgment for employer on grounds employee's travel from New York to Texas was not directed by employer, but rather for employee to visit his ill sister).

These travel arrangements were not so much for Denny's benefit, but rather for the benefit of CGL. As Denny was appearing at the conference as the "face of the company," it was important to CGL that Denny be given sufficient time to rest and restore his mental sharpness prior to said appearance. *Id.* at 119:3-120:2. Denny agreed that CGL was the beneficiary of this arrangement:

> Q. So, in fact, it would be fair to say that Canonical benefited by having you there on that Friday because it allowed you to be a better recruiter on Monday; right?
>
> A. I would agree with that, yeah.

*Id.* at 120:9-15.

Critically, CGL appears to have conceded that Denny was performing his job duties simply by virtue of his presence in Las Vegas for the three days preceding the conference. This notion is best reflected by CGL's decision to approve and reimburse Denny's meal at Joyful House restaurant in the early morning hours of Saturday, November 30, 2019 -- merely a few hours before the subject collision. (ECF 40-8, at CGL_000172) (Ex. 2 at 67:23-68:21). To reiterate, CGL's reimbursement policy mandated that the company would only reimburse employees for "reasonable travelling, hotel and other expenses, **properly incurred by you in or**

**about the due performance of your duties**[.]" (ECF 40-2, at § 5.4) (emphasis added). This begs the obvious question: *why would CGL conclude that Denny was acting in due performance of his duties during his dinner at Joyful House, only to claim Denny was outside the course and scope of his employment when he picked up food four hours later?*

3. Foreseeability of Denny's actions

CGL's motion notably fails to address whether Denny's decision to drive from his hotel room to pick up food was foreseeable -- a question bearing direct relevance on the course and scope analysis. As aptly explained by one California appellate court:

> However, "foreseeability" in this context must be distinguished from "foreseeability" as a test for negligence. In the latter sense "foreseeable" means a level of probability which would lead a prudent person to take effective precautions whereas "foreseeability" as a test for *respondeat superior* merely means that in the context of a particular enterprise an employee's conduct is **not so unusual or startling** that it would seem unfair to include the loss resulting from it among other costs of the employer's business.
>
> One traditional means of defining this foreseeability is seen in the distinction between minor 'deviations' and substantial 'departures' from the employers' business. The former are deemed foreseeable and remain within the scope of employment; the latter are unforeseeable and take the employee outside the scope of his employment.
>
> . . . The question is often one of fact, and the rule is now established that only a **substantial** deviation or **departure** takes the employee outside the scope of his employment.

*Moradi v. Marsh USA, Inc.*, 219 Cal.App.4th 886, 901, 162 Cal.Rptr.3d 280 (Ct. App. Cal. 2013) (emphasis in original).[1] Here, CGL reasonably admits it expected there would be occasions in

---

[1] *Moradi* went on to state:

> More recently, the test was stated in this way: "In assessing whether an employee's wrongful act was required by or incidental to his duties, the law defines occupational duties broadly. The fact that an employee is not engaged in the ultimate object of his employment does not preclude attribution of liability to an employer. . . . **For example, acts necessary to the comfort, convenience, health, and welfare of the employee while at work, though strictly personal to himself** and not acts of service, do not take him outside the scope of his employment.

*Id.* at 901-02 (emphasis in original).

11

which Denny would drive from his hotel to pick up food during the normal course of his travels. (Ex. 2 at 61:25-62:21). Indeed, Denny's actions were so normal, and so typical of the situation, one cannot rationally argue against their foreseeability.

In this regard, CGL's argument that the collision occurred on Denny's "downtime," thereby precluding CGL from liability, is deemed ineffective. Simply because Denny was engaging in a activity for his personal comfort during the early morning hours does not, *ipso facto*, negate his course and scope status. *See Higginbotham v. AN Motors of Scottsdale*, 228 Ariz. 550, 553-54, 269 P.3d 726, 729-30 (Ct. App. 2012) (denying employer's motion for summary judgment on grounds that employee "was expressly authorized to stop for refreshments or to complete personal errands during his 'downtime.'").

**B. Determining *Respondeat Superior* is a Question of Fact for the Jury.**

"Whether an employee was acting within the scope of his or her employment is generally a question for the trier of fact." *Candow v. Dust*, No. 2:11-CV-00343-LRH-GWF, 2014 WL 4636372, at *4 (Dist. Nev. Sept. 16, 2014) (*citing Kornton v. Conrad, Inc.*, 119 Nev. 123, 125, 67 P.3d 316, 317 (2003)). More specifically, the imposition of *respondeat superior* liability on an employer for his employee's tortious conduct "aims at the causal connection between a business's activities and the harm caused." *Id.* And, as the Nevada Supreme Court has repeatedly stated, "questions of causation are generally issues of fact left to the trier of fact to resolve." *See, e.g., Desert Valley Construction v. Hurley*, 96 P.3d 739, 741 (Nev. 2004); *see also National Convenience Stores, Inc. v. Fantauzzi*, 94 Nev. 655, 659, 584 P.2d 689, 692 (1978) (**"Whether an employee was engaged in the scope of employment when the tortious act occurred raises an issue of fact which is within the province of a jury."**) (emphasis added); *Molino v. Asher*, 96 Nev. 814, 818, 618 P.2d 878, 880 (1980) (same).

This sensible approach to the course and scope question, which emphasizes that fact-driven analyses of this nature are properly reserved for the jury – is not unique to Nevada. Rather, **the belief that it is inappropriate to decide, as a matter of law, whether an employer is vicariously liable for his employer's tortious conduct, is a view shared by courts nationwide.** *See, e.g., Perez v. Van Groningen & Sons, Inc.*, 41 Cal. 3d 962, 968, 719 P.2d 676, 679 (1986) ("Generally, the issue of scope of employment is a question of fact."); *Johnson v. Knorr*, No. CIV.A. 01-3418, 2005 WL 3027401, at *1 (E.D. Pa. Nov. 9, 2005) ("It is ordinarily a question for the jury whether or not a particular act comes within the scope of a servant's employment."); *Scott v. McWood Corp.*, 82 N.M. 776, 779, 487 P.2d 478, 481 (N.M. 1971) ("The basic rule is that the question of scope of employment is within the province of the jury."); *S. Life & Health Ins. Co. v. Smith*, 218 So. 2d 784, 786 (Fla. Dist. Ct. App. 1969) (same); *Hanes v. Greyhound Lines, Inc.,* No. CIV.A. 03-0671-CGC, 2005 WL 1971118, at *2 (S.D. Ala. Aug. 16, 2005) (same); *Richard J. & Esther E. Wooley Tr. v. DeBest Plumbing, Inc.,* 133 Idaho 180, 186, 983 P.2d 834, 840 (1999) (same). Here, the facts clearly do not warrant a deviation from this longstanding principle.[2]

. . .

. . .

. . .

. . .

. . .

. . .

---

[2] The mere fact CGL's motion calls for the Court to evaluate whether Denny's early morning fast-food meal was for "purposes of sustenance" or for "frolic[ing]" reasons exemplifies the unsettled, fact-intensive nature of this dispute, clearly unfit for summary adjudication. (*See* ECF No. 40 at 20:6-22).

13

IV. **CONCLUSION**

Pursuant to the foregoing facts and legal authority, Plaintiff respectfully requests an order denying CGL's Motion for Summary Judgment.

DATED this 16th day of January, 2024.

**LADAH LAW FIRM**

*/s/ Ramzy Paul Ladah, Esq.*
_____
**RAMZY P. LADAH**
Nevada Bar No. 11405
517 S. Third Street
Las Vegas, NV 89101
*Attorneys for Plaintiff Ronald Carpenter*

**EXHIBITS INDEX**

1. Deposition Transcript of Gordon Denny, Vol II
2. Deposition Transcript of Andrew Sinclair
3. Deposition Transcript of Gordon Denny, Vol I

# CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), on this 16th day of January, 2024, a true and complete copy of **PLAINTIFF'S RESPONSE TO DEFENDANT CANONICAL GROUP LIMITED'S MOTION FOR SUMMARY JUDGMENT** was served on the following interested parties by the action(s) indicated below:

Robert Molina, Esq.
**PYATT SILVESTRI**
701 Bridger Avenue, Suite 600
Las Vegas, Nevada 89101
*Attorneys for Defendants*
*GORDON DENNY and PV HOLDING CORP*

Gary R. Guelker, Esq.
**RESNICK & LOUIS, P.C.**
8925 West Russell Road, Suite 220
Las Vegas, Nevada 89148
*Attorneys for Intervenor*

Wade Beavers, Esq.
**FENNEMORE CRAIG P.C.**
7800 Rancharrah Parkway
Las Vegas, Nevada 89511
*Attorneys for Defendant*
*CANONICAL GROUP LIMITED*

Kristian Lavigne, Esq.
Jeffrey Lavigne, Esq.
**THE LAW OFFICE OF KRISTIAN LAVIGNE AND ASSOCIATES, P.C.**
8064 W. Sahara Ave. # 102
Las Vegas, NV 89117
*Attorneys for Plaintiff Ronald Carpenter, Jr.*

<u>Method of Service</u>

☐ **U.S. First Class Mail:** I deposited a true and correct copy of said document(s) via U.S. First Class mail, with postage pre-paid.

☒ **Electronic Service:** I caused said document to be delivered by electronic means upon all eligible electronic recipients via the United States District Court CM/ECF system or Clark County District Court E-Filing system (Odyssey)

*/s/ Jenny Marimberga*
An employee of Ladah Law Firm