# EXHIBIT 2

Deposition Transcript of Andrew Sinclair

Case 2:23-cv-00208-RFB-NJK   Document 44-2   Filed 01/16/24   Page 2 of 13

Andrew Sinclair                                    Ronald Carpenter, Jr. v. Gordon Denny, et al.

Page 1

```
 1                  UNITED STATES DISTRICT COURT

 2                       DISTRICT OF NEVADA

 3

 4   RONALD CARPENTER, JR., an        )
     individual,                      )
 5                                    )
                                      )
 6              Plaintiff,            )
                                      )
 7   vs.                              )CASE NO.:
                                      )2:23-CV-00208-RFB-NJK
 8   GORDON DENNY, an individual;     )
     PV HOLDING CORP. dba AVIS CAR    )
 9   RENTAL, a foreign corporation;   )
     CANONICAL GROUP LIMITED, a       )
10   foreign corporation; DOES I      )
     through V, inclusive and ROE     )
11   CORPORATIONS II through V,       )
     inclusive,                       )
12                                    )
                                      )
13              Defendants.           )
                                      )
14                                    )
     ALLSTATE INSURANCE COMPANY,      )
15                                    )
                Intervenor.           )
16                                    )

17         VIDEOTAPED DEPOSITION OF ANDREW SINCLAIR

18            30(b)(6) for Canonical Group Limited

19            Taken on Tuesday, September 5, 2023

20                        At 1:11 p.m.

21              By a Certified Court Reporter

22         Taken remotely via Zoom Videoconference

23

24   Reported by: Johanna Vorce, CCR No. 913

25   Job No.: 54341, Firm No. 116F
```

Case 2:23-cv-00208-RFB-NJK   Document 44-2   Filed 01/16/24   Page 3 of 13

Andrew Sinclair                                    Ronald Carpenter, Jr. v. Gordon Denny, et al.

Page 2

```
 1   REMOTE APPEARANCES:

 2        For Plaintiff:

 3             LADAH LAW FIRM

 4             DANIEL C. TETREAULT, ESQ.
               517 South Third Street
 5             Las Vegas, Nevada 89101
               702-252-0055
 6             dtetreault@ladahlaw.com

 7

 8        For Defendant, CANONICAL:

 9             FENNEMORE CRAIG P.C.

10             WADE E. BEAVERS, ESQ.
               7800 Rancharrah Parkway
11             Reno, Nevada 89511
               775-788-2200
12             wbeavers@fennemorelaw.com

13

14        For Defendants, DENNY and AVIS:

15             PYATT SILVESTRI

16             ROBERT P. MOLINA, ESQ.
               701 Bridger Avenue
17             Suite 600
               Las Vegas, Nevada 89101
18             702-383-6000
               rmolina@pyattsilvestri.com
19

20        For Intervenor:

21             RESNICK & LOUIS

22             GARY R. GUELKER, ESQ.
               222 Main Street
23             Fifth Floor
               Salt Lake City, Utah 84101
24             801-960-3655
               gguelker@rlattorneys.com
25
```

Case 2:23-cv-00208-RFB-NJK   Document 44-2   Filed 01/16/24   Page 4 of 13

Andrew Sinclair                                          Ronald Carpenter, Jr. v. Gordon Denny, et al.

Page 3

```
 1     Also Present:
 2            JOSEPH CAMP, Legal Videographer
 3                    * * * * * * *
 4
 5                        I N D E X
 6
 7   WITNESS:  ANDREW SINCLAIR
 8
 9   EXAMINATION                                     PAGE
10   By Mr. Tetreault                                5
11   By Mr. Molina                                   56
12   By Mr. Guelker                                  71
13   FURTHER EXAMINATION
14   By Mr. Tetreault                                76
15   By Mr. Molina                                   77
16
17
18                      E X H I B I T S
19
20   NUMBER              DESCRIPTION              MARKED
21
22              (NO EXHIBITS MARKED.)
23
24
25
```

Case 2:23-cv-00208-RFB-NJK   Document 44-2   Filed 01/16/24   Page 5 of 13

Andrew Sinclair                                    Ronald Carpenter, Jr. v. Gordon Denny, et al.

Page 30

1  let me -- let me think.
2          Mr. Denny is, I assume, asked by Canonical to
3  attend the Amazon Web Services convention in Las Vegas in
4  November of 2019, fair?
5     A.   Yes.  I think that probably happened.
6     Q.   Okay.  How was that accomplished?  Was Mr. Denny
7  expected to make his own travel arrangements, or does
8  Canonical make his travel arrangements for him?  How is
9  that -- how would that have been done?
10    A.   Okay.  Mr. Denny would have requested approval to
11 take the trip in advance of the trip.  That's a web form, an
12 internal web form that he would fill out.  That would
13 include information about the dates of the trip, the
14 location, and the purpose.  And that would go -- he would
15 request that approval, and it would go to his manager.  His
16 manager would approve or not.  But if the manager did not
17 approve, then there was probably a follow-up with some
18 differences or clarifications.  If a -- when the manager
19 does finally approve, then he would forward that approval to
20 an outside travel agency that Canonical uses, who would then
21 arrange for his travel, book his -- his key travel elements
22 like the flight and hotel.
23    Q.   Okay.  So do you know whether or not Mr. -- the
24 way -- the way you kind of phrased it, is it sounds like
25 Mr. Denny would request permission from Canonical to attend

Case 2:23-cv-00208-RFB-NJK   Document 44-2   Filed 01/16/24   Page 6 of 13

Andrew Sinclair                                    Ronald Carpenter, Jr. v. Gordon Denny, et al.

Page 31

1  this -- this -- this conference.
2      A.   Yes.  That the request is specifically the travel.
3  The reason might be attending the conference, so it may be
4  that his manager asked him specifically:  I want you to
5  attend this conference and do recruiting.
6           And so maybe -- he might not have been requesting
7  whether to go from his manager through the travel request,
8  but he's requesting specifically the travel.  It's the --
9  it's designed to ensure that the travel agents -- the
10 process is designed to ensure that the travel agent is only
11 booking travel after there's internal approval to travel.
12     Q.   Understood.  Okay.
13          Well, do you know whether or not Mr. Denny was
14 asked by either Ms. Woods or Mr. Ellis to attend this
15 conference in Las Vegas in November of 2019?
16     A.   I don't know for sure, but I assume yes.  That
17 would be why he would go.
18     Q.   Right.
19          And, I guess, what I'm asking is, is it -- it --
20 it would be more typical in a -- in a situation such as this
21 for someone from the company to say:  Hey, there's a Amazon
22 Web Services conference in Las Vegas.  This is a good
23 opportunity for us to potentially recruit.  We'd like you to
24 go in and recruit and see what you can -- see if you can,
25 you know, find us anybody there that might be suitable.

Case 2:23-cv-00208-RFB-NJK   Document 44-2   Filed 01/16/24   Page 7 of 13

Andrew Sinclair                                     Ronald Carpenter, Jr. v. Gordon Denny, et al.

Page 61

1  appeared to me -- I -- I noticed that it wasn't in his
2  expense report, which indicates to me that it was paid by
3  the travel agency.
4       Q.   Okay.  And so if an employee was going to have a
5  rental car, did Canonical make sure that the employee had a
6  valid driver's license before going on the trip?
7            MR. BEAVERS:  Objection, form.
8            THE WITNESS:  I don't think we would suspect that
9  an employee who was planning to rent a car wasn't able to
10 drive it.
11 BY MR. MOLINA:
12      Q.   Okay.  Now, as far as for any trips -- I'm sorry.
13           So when you had Mr. Denny coming to the United
14 States and he had a rental car, you would expect that when
15 he was in Las Vegas, he would be expected to be eating,
16 correct?
17           MR. BEAVERS:  Objection, form.
18           THE WITNESS:  Yes.
19           THE COURT REPORTER:  I'm sorry, he would be
20 expecting to what?
21 BY MR. MOLINA:
22      Q.   He would be expected to be eating at some point,
23 correct?
24      A.   Yes.
25      Q.   All right.  And there was -- he -- was there any



Case 2:23-cv-00208-RFB-NJK   Document 44-2   Filed 01/16/24   Page 8 of 13

Andrew Sinclair                                    Ronald Carpenter, Jr. v. Gordon Denny, et al.

Page 62

1  limitations where he could eat?
2       A.   No.
3       Q.   All right.  And so then it was expected by
4  Canonical that Mr. Denny would be having to drive from where
5  he was eating to his hotel; is that correct?
6            MR. BEAVERS:  Objection, form.
7            THE WITNESS:  I don't think we -- I -- I don't
8  think the company thought about the logistics of people
9  getting meals in different places.
10           Many places we travel don't -- you don't need a
11 car to get around or to get a meal, so I don't know that we
12 assumed there was -- there was driving for the purpose of
13 eating.
14 BY MR. MOLINA:
15      Q.   No.  But you would agree that there -- there
16 was -- Canonical expected that there's a possibility that
17 during his trip he would be having to travel to get food and
18 then return to his hotel room; is that correct?
19           MR. BEAVERS:  Objection, asked and answered.
20           THE WITNESS:  I think we would expect that he may
21 do that.  I don't know that he would have -- had to have
22 done that.  I -- I notice that the other expenses on that
23 trip were at the hotel for meals so --
24 BY MR. MOLINA:
25      Q.   In prior trips that Mr. Denny had, there were

Case 2:23-cv-00208-RFB-NJK   Document 44-2   Filed 01/16/24   Page 9 of 13

Andrew Sinclair                                    Ronald Carpenter, Jr. v. Gordon Denny, et al.

Page 65

1  indicate that his recollection of -- of that correction was
2  incorrect?
3       A.   No.
4       Q.   Okay.  All right.  So are you aware of any
5  rejections of any receipts that were submitted by Mr. Denny
6  during the subject trip?
7       A.   No.  It looked -- that report looked like it was
8  accepted.
9       Q.   Okay.  And -- and I -- and I just want to be
10 clear.
11           What would -- other than either the amount of an
12 expense or whether it'd violate the number of meals per day,
13 what would another be -- or what would another basis for
14 rejecting an expense?
15      A.   A common one is a lack of an itemized receipt.
16      Q.   Okay.  Is it -- is it common for a person --
17 actually, let me -- let me go back.
18           So you would have an employee who said:  You know
19 what, I went to Burger King, but, you know what, I paid
20 cash, and I just don't have a receipt.
21           In that case, can you take the person's word for
22 it, or is Canonical's opinion that, Well, unless you have
23 the receipt, you just can't get reimbursed?
24           THE COURT REPORTER:  I'm sorry, unless you have
25 the receipt what?



Case 2:23-cv-00208-RFB-NJK   Document 44-2   Filed 01/16/24   Page 10 of 13

Andrew Sinclair                                     Ronald Carpenter, Jr. v. Gordon Denny, et al.

Page 67

1  submit something, right?
2        So, I mean, unless everyone is talking about all
3  these meals they're consuming and not claiming expenses,
4  I -- I don't know what happens.  I don't know what's common.
5        Q.  Okay.  And -- and I -- and I apologize.  I -- I --
6  this was worded just a little bit different from the prior
7  question.
8        But are -- are you aware of any receipts that
9  Mr. Denny submitted for the subject trip to Las Vegas that
10 were rejected and -- and not just rejected temporarily but
11 rejected outright -- I'm sorry, not outright, but
12 permanently?  Meaning, even after trying to resubmit, that
13 they still were not accepted?
14       A.  No.
15       Q.  And if there were any such rejections, would that
16 be noted in that reimbursement documentation that's in his
17 file?
18       A.  Yes, I believe so.  The -- the expense report has
19 an action log, as part of it, with all the things that
20 happened starting from the submission of the report.  So you
21 would see a rejection or a comment if something was rejected
22 and then changed and resubmitted.
23       Q.  Okay.  And so on the date of the accident, there
24 was a receipt that was submitted by Mr. Denny for a meal at
25 Joyful House that had some orange chicken and some wine.

Case 2:23-cv-00208-RFB-NJK   Document 44-2   Filed 01/16/24   Page 11 of 13

Andrew Sinclair                                    Ronald Carpenter, Jr. v. Gordon Denny, et al.

Page 68

1               That was a receipt that was accepted by -- by
2    Canonical, correct?
3        A.   Yes.
4        Q.   Okay.  And I think that the receipt indicated that
5    the meal -- I think that the order was in, I believe,
6    something close to 12:30 at night, and I can't remember
7    what -- what time the -- the -- the check was closed.
8               But given the time of the order, was that any
9    basis for rejecting that -- that -- that receipt?
10       A.   Yes.  I think it should have been rejected.  It
11   was on a weekend that wasn't part of his travel.  His travel
12   day was the Friday.
13       Q.   And I apologize, but you said that should have
14   been rejected?
15       A.   Yes.
16       Q.   Okay.  But do -- are you aware of any indication
17   that anyone at Canonical -- I'm sorry.
18              This -- this receipt was actually reviewed though,
19   correct?
20       A.   Yes.  It appears it was reviewed and approved by
21   Matt Ellis.
22       Q.   Okay.  And so are you saying that you -- what is
23   your basis for saying that -- I'm sorry.
24              Is there any indication that Mr. Ellis' decision
25   was questioned by anyone at Canonical?

Case 2:23-cv-00208-RFB-NJK   Document 44-2   Filed 01/16/24   Page 12 of 13

Andrew Sinclair                                          Ronald Carpenter, Jr. v. Gordon Denny, et al.

Page 72

1    team now that does the further review of expenses, so -- and
2    she said, "This is the kind of thing -- the kind of reason
3    we have this extra step now, because managers are doing lots
4    of things and not specifically going through every line of
5    every expense report, and just they were approving things
6    that -- some of which shouldn't have been approved."
7         Q.   You -- you agree, though, that Canonical paid for
8    Mr. Denny's hotel over that entire weekend, correct?
9         A.   Yes.
10        Q.   And you agree that they paid for his rental car
11   over the entire weekend, correct?
12        A.   Yes.
13        Q.   Do you believe those reimbursements were also
14   improper?
15        A.   If the travel was -- I -- I don't know the exact
16   reason for him being there that weekend.  If he was there
17   because he wanted to be there ahead of time, then, yes, I
18   think those were improper.  And -- and we have a
19   mechanism -- we have a mechanism for negative expense,
20   because these things are centrally booked, where if you want
21   to add travel on the front or back of a trip, you can do so.
22   You get a -- you get the travel agent to provide you with
23   the flight cost it would have been, and if it's greater, and
24   the hotel rooms, obviously.  And then you can negative
25   expense those and -- and pay those yourself and reimburse

Case 2:23-cv-00208-RFB-NJK   Document 44-2   Filed 01/16/24   Page 13 of 13

Andrew Sinclair                                    Ronald Carpenter, Jr. v. Gordon Denny, et al.

Page 82

```
 1                    REPORTER'S CERTIFICATE

 2    STATE OF NEVADA    )
                         )  SS
 3    COUNTY OF CLARK    )

 4

 5             I, Johanna Vorce, a duly certified court reporter
      licensed in and for the State of Nevada, do hereby certify:
 6
               That I reported the taking of the deposition of
 7    the witness, ANDREW SINCLAIR, at the time and place
      aforesaid;
 8
               That prior to being examined, the witness was by
 9    me duly sworn to testify to the truth, the whole truth, and
      nothing but the truth;
10
               That I thereafter transcribed my shorthand notes
11    into typewriting and that the typewritten transcript of said
      deposition is a complete, true, and accurate record of
12    testimony provided by the witness at said time to the best
      of my ability.
13
               I further certify (1) that I am not a relative,
14    employee, or independent contractor of counsel of any of the
      parties; nor a relative, employee or independent contractor
15    of the parties involved in said action; nor a person
      financially interested in the action; nor do I have any
16    other relationship with any of the parties or with counsel
      of any of the parties involved in the action that may
17    reasonably cause my impartiality to be questioned; and (2)
      that transcript review pursuant to FRCP 30(e) was not
18    requested.

19             IN WITNESS WHEREOF, I have hereunto set my hand in
      the County of Clark, State of Nevada, this 18th day of
20    September, 2023.

21

22
                                       _____
23
                                       Johanna Vorce, CCR No. 913
24

25
```