SHANNON S. PIERCE (Nev. Bar No. 12471)
WADE BEAVERS (Nev. Bar No. 13451)
FENNEMORE CRAIG, P.C.
7800 Rancharrah Parkway
Reno, NV 89511
Tel: (775) 788-2200 / Fax: (775) 788-2283
Email: spierce@fennemorelaw.com; wbeavers@fennemorelaw.com

*Attorneys for Canonical Group Limited*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RONALD CARPENTER, JR., an individual; | |
| Plaintiff, | |
| vs. | CASE NO.: 2:23-CV-00208-RFB-NJK |
| GORDON DENNY, an individual; PV HOLDING CORP. dba AVIS CAR RENTAL, a foreign corporation; CANONICAL GROUP LIMITED, a foreign corporation; DOES I through V, inclusive and ROE CORPORATIONS II through V, inclusive; | **CANONICAL GROUP LIMITED'S RESPONSE TO GORDON DENNY AND PV HOLDING CORP.'S PARTIAL OPPOSITION TO MOTION FOR SUMMARY JUDGMENT [ECF NO. 43]** |
| Defendants. | |
| ALLSTATE INSURANCE COMPANY; | |
| Intervenor. | |

Defendant Canonical Group Limited ("CGL") hereby submits this response to co-defendants Gordon Denny ("Denny") and PV Holding Corp.'s ("Avis," and together, the "Co-Defendants") *Partial Opposition to Canonical Group Limited's Motion for Summary Judgment* filed January 5, 2024. *See* ECF No. 43 ("Partial Opposition"). For the reasons set forth, CGL's *Motion for Summary Judgment* ("Motion") should be granted as to Plaintiff's vicarious liability claim, as well as all of Plaintiff's other claims.

### MEMORANDUM OF POINTS AND AUTHORITIES

Denny and Avis have filed their procedurally improper "Partial Opposition" in what

1

appears to be a simple interest in keeping as many parties in this case as possible, presumably hoping that additional defendants might contribute proceeds toward a possible settlement. The Partial Opposition must be disregarded in its entirety, as neither Denny nor Avis has standing to oppose CGL's Motion, as neither of them has filed a cross-claim against CGL (a recognized prerequisite for opposing a co-defendant's request for summary judgment) nor do Denny and Avis articulate any meaningful interest in the survival of Plaintiff's claims against CGL beyond the conclusory statement that they would prefer to "shar[e] the burden [of Plaintiff's alleged damages] with Canonical." ECF No. 43, Partial Opposition at 6:27-28. To the extent they imply and/or assume that joint liability could apply between CGL, Denny, and or Avis, they do nothing to establish such a fact, nor do they cite authority that such a possibility might confer on them a 'strong interest' in the outcome of CGL's motion such that they should be permitted to oppose.

Even if the Court were to consider the Partial Motion, the arguments Denny and Avis offer against summary judgment on Plaintiff's vicarious liability claim appear to rely primarily on inapplicable California case law describing an "incidental benefit / required vehicle exception" to Nevada's going and coming rule that is not recognized in any controlling Nevada case. Denny and Avis also fail to distinguish the persuasive authority set forth in the Motion that courts interpreting common law respondeat superior <u>reject</u> expansion of the doctrine to encompass the "travelling employee" principle that exists in workers compensation statutes, whereby all of an employee's travel for food and lodging during an out of state business trip might be construed as being in the course of his employment for purposes of identifying an industrial accident. As this Court is aware, the case law governing application of respondeat superior in the Nevada tort context is applied more narrowly, and requires a court to find that the specific task an employee is driving to complete constitutes a "special errand" that is both within the course and scope of his employment and for his employer's benefit. It is undisputed that the accident occurred at 4:00 a.m. on a Saturday when Denny had no recruiting activities planned and was returning to his hotel with his girlfriend after picking up fast food (which he did not expense to the company, since he had already expensed his meal for the evening hours earlier). By Denny's own admission, the fast food trip itself had nothing to do with Denny's work for

CGL as a recruiter, and therefore cannot be construed as a "special errand" under the law that would put Denny within the course and scope of his employment with CGL. CGL is entitled to summary judgment on Plaintiff's claim for "vicarious liability."

I.      **RELEVANT PROCEDURAL BACKGROUND**

This is a state law negligence action arising out of an automobile accident between Plaintiff and Denny. As detailed in CGL's Motion (*see* ECF No. 40 at 3-4), Denny and Avis were the original defendants in this action, with Plaintiff adding CGL as an afterthought through his Second Amended Complaint filed on January 12, 2023 in the State Court Action.[1] Denny and Avis filed their answer to the Second Amended Complaint on January 26, 2023, and throughout this case both have chosen not to assert any cross-claim against CGL for indemnification, contribution, or any other cause of action.[2] *See* Fed. R. Civ. P. 13(g) ("A pleading may state as a crossclaim any claim by one party against a co-party if the claim arises out of the transaction or occurrence that is the subject matter of the original action . . . . The cross claim may include a claim that the co-party is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.").

In the answer that Denny and Avis filed to the Second Amended Complaint, they assert Plaintiff's contributory negligence as an affirmative defense. *See, e.g.,* ECF No. 1-3 ("SECOND AFFIRMATIVE DEFENSE": "The damages, if any, suffered by Plaintiff were proximately caused in whole or in part, or were contributed to by reason of the negligence of the Plaintiff and such negligence was greater than the negligence, if any, of these answering Defendants."). CGL also asserted Plaintiff's contributory and/or comparative negligence as an affirmative defense in its Answer. *See* ECF No. 2, CGL's Answer at 8 ("EIGHTH AFFIRMATIVE DEFENSE":

---

[1] Capitalized terms not otherwise defined have the meanings ascribed to them in the Motion.

[2] It should be noted that any such crossclaim filed at this late juncture of the case—with discovery completed and dispositive motions nearly fully-briefed—would be unduly prejudicial to CGL, and would unduly complicate and delay these proceedings, and would therefore be untimely. *See, e.g.,* 6 Wright et al., Federal Practice & Procedures § 1431, at 242-243 (decision to allow a cross-claim is within court's judicial discretion and subject to considerations of judicial economy and protecting other parties from surprise and prejudice). Nor has Denny requested leave to file such a late crossclaim.

1 | "Plaintiff's claims are barred by his own contributory or comparative negligence.").

2 | **II.   LEGAL ARGUMENT**

3 | **a. Denny and Avis Each Lack Standing to Oppose CGL's Motion for
4 | Summary Judgment**

Denny and Avis' "Partial Opposition" must be <u>disregarded in its entirety</u>, because they lack standing to oppose CGL's Motion, where they have not asserted any cross-claim or other affirmative claim against CGL.  Several courts in this circuit have imposed such a categorical rule, based on sound reasoning.  *See, e.g., Brewer v. Dodson Aviation*, 2006 WL 3231974, *4, fn. 5 (W.D. Wash. Nov. 7, 2006) (declining to consider co-defendant's brief opposing motion for summary judgment because opposing co-defendant "has no claims against [the movant] and no standing to oppose [movant's] motion for summary judgment."); *see also Dixon v. County of Alameda*, 1997 WL 220311, at *6, fn. 8 (N.D. Cal. Apr. 18, 1997) (same); *see also Eckert v. City of Sacramento*, 2009 WL 3211278 (E.D. Cal. Sep. 30, 2009) (reasoning that, in the absence of a cross-claim, the co-defendants were not "adverse parties" with standing to oppose one another's motions for summary judgment, and therefore such opposition would be disregarded) (citing *Blonder v. Casco Inn Residential Care, Inc.*, 2000 WL 761895, at *1 (D. Me. May 4, 2000); *Fraioli v. Lemcke*, 328 F.Supp.2d 250, 263, n.4 (D. R.I. 2004); *Dixon v. County of Alameda*, 1997 WL 220311, at *6 n. 8 (N.D. Cal. Apr. 18, 1997); *C.F. Bean Corp. v. Clayton Indus., Ltd.*, 1996 WL 470644, at *1 (E.D. La. Aug. 19, 1996)).

The District of Rhode Island, in its published decision in *Fraoli*, explained the rationale for this bright-line rule as follows:  "The Federal Rules of Civil Procedure permit an adverse party to submit his or her opposition to a motion for summary judgment. [citing Fed. R. Civ. P. 56(c)]  However, since none of the defendants in this case have filed cross claims against each other, the defendants are not adverse parties who are entitled to object to each other's motions for summary judgment." *Fraioli*, 328 F.Supp.2d at 263, fn. 4.

The case law offered by Co-Defendants is either mis-cited or insufficient to overcome the weight of the persuasive reasoning above.  The Ninth Circuit *Hoover* case cited at 6:10-12 of the Partial Opposition dealt with a co-defendant's standing to *appeal* a ruling on summary judgment

(whereby its cross claim for indemnification was also dismissed)_ and did not analyze in any way the question of standing to directly oppose a co-defendant's motion in the district court. *See, e.g., Hoover v. Switlik Parachute Co.*, 663 F.2d 964, 966-967 (9th Cir. 1981).. The other district court cases on with the Co-Defendants rely acknowledge splits of authority on the issue but reached the conclusion that co-defendants must articulate a clear material interest in the outcome of a summary judgment motion in order to justify filing an opposition. *See, e.g., D.F. ex rel. Amador v. Sikorsky Aircraft Corporation*, 2017 WL 4922814, *11-12 (S.D. Cal. Oct. 30, 2017); *Living Ctr. of S. Cal. v. City of Los Angeles*, 205 F.Supp.3d 1105, 1109-1110 (C.D. Cal. 2016) (permitting co-defendant City's opposition to motion for summary judgment where it had articulated a "<u>strong interest</u> in the outcome of the Motion. . . .") (emphasis added).

Notably, even applying the more permissive standard set forth in the *Sikorsky* and *Living Center*[3] decisions, courts impose a burden on the opposing co-defendant to show a "strong interest" in the motion. *See Living Ctr.*, 205 F.Supp.3d at 1009. The Co-Defendants have made no effort whatsoever to meet that burden. More importantly, the court in *Sikorsky* <u>rejected</u> the opposing co-defendant's standing arguments and <u>disregarded their opposition</u>, noting that the court could "*find no reason to believe that dismissing [the movant] would impact [opposing co-defendant's] ability to limit its liability to the proportion of its own fault.*" *Sikorsky*, 2017 WL 4922814, at *12. The *Sikorsky* case involved product liability claims that multiple defendants were negligent in designing and manufacturing a particular component of a helicopter. The court noted that the damages at issue on summary judgment were subject to a California statutory provision requiring that joint tortfeasors' liability for non-economic damages would be "several only . . . meaning that Plaintiffs may only recover from [the opposing co-defendant] the proportion of their non-economic damages for which [it] is responsible, regardless of whether

---

[3] The facts of the *Living Center* case involved various statutory discrimination claims asserted by non-profit community organizations against government entities, which bear no semblance to the facts or law applicable in this negligence action. The court's analysis that the City of Los Angeles had a "strong interest" in opposing a motion for summary judgment filed by the co-defendant community redevelopment agency involved allocation of liability among alleged successors in interest, not principles of respondeat superior. In short, the case is distinguishable on its facts and inapposite.

[the movant] is a part of the case." *Id.* at *12 (citing Cal. Civ. Code S 1431.2). The court noted that, even where joint liability might apply as to economic damages, the co-defendant's decision to forgo filing a timely cross-claim undermined its claim to any interest in the outcome of summary judgment. *Id.* at *12, fn. 12 (citations omitted).

Here, to the extent this Court deems it appropriate to apply the more permissive of the two approaches, it must first determine whether Denny and Avis have persuasively explained how they will be legally aggrieved by a dismissal of CGL from this case. They state simply and without citation to legal authority that

> *If CANONICAL were to be dismissed from this case[,] DENNY and AVIS may face having to bear all of Plaintiff's alleged damages rather than sharing the burden with CANONICAL.*

This statement assumes, without support, that CGL would be lawfully obligated to "*share*" any of Denny's or Avis' liability if Plaintiff succeeds on his negligence claim at trial, an apparent inference that CGL, Denny, and Avis would be jointly liable for such claim. However under Nevada Revise Statutes ("NRS") 41.141, setting forth the state's modified comparative negligence scheme, the law is that CGL's, Denny's, and Avis' respective liabilities must be determined severally, at trial, in proportion to their own fault, not jointly. As stated, all three of CGL, Denny, and Avis have pleaded Plaintiff's contributory and comparative negligence as an affirmative defense, implicating a separate determination of liability as to each defendant. *See,* NRS 41.141:

> 1. In any action to recover damages for death or injury to persons . . . in which comparative negligence is asserted as a defense, the comparative negligence of the plaintiff . . . does not bar a recovery if that negligence was not greater than the negligence or gross negligence of the parties to the action against whom recovery is sought.
>
> 2. In those cases, the judge shall instruct the jury that:
>
> (a) The plaintiff may not recover if the plaintiff's comparative negligence
> (b) If the jury determines the plaintiff is entitled to recover, it shall return:
>
> (1) By general verdict the total amount of damages the plaintiff would be entitled to recover without regard to the plaintiff's comparative negligence; and
>
> (2) A special verdict indicating the percentage of negligence attributable to each party remaining in the action.

6

. . .

> **4. Where recovery is allowed against more than one defendant in such an action, except as otherwise provided . . . each defendant is severally liable to the plaintiff only for that portion of the judgment which represents the percentage of negligence attributable to that defendant.**

NRS 41.141 (emphasis added); *see also, e.g., Café Moda, L.L.C. v. Palma*, 128 Nev. 78, 82-83 272 P.3d 137, 140-141 (noting that in passing NRS 41.141 the Nevada Legislature "abandon[ed] joint and several liability amongst negligent defendants" and that, in cases alleging comparative negligence, a negligent cotortfeasor's liability is several, even if the injured party is not ultimately found to be comparatively negligent.).

As such, the facts at issue are highly similar to the facts at issue in the *Sikorsky* case upon which Denny and Avis mistakenly rely. Just like the opposing co-defendant in that case, they lack any material interest in the outcome of a motion that would affect only CGL's own several liability in proportion to its own fault. *See Sikorsky*, 2017 WL 4922814, at *12 (". . . the court can find no reason to believe that dismissing DuPont would impact Sikorsky's ability to limit its liability to the proportion of its own fault."); *see also, e.g., Trantham v. Super T. Transport, Inc.*, 311 F.Supp.3d 1247, 1251-1252 (D. Colo. Apr. 30, 2018) ("Regardless of whether Moving Defendants are in the case, Opposing Defendants will not be liable for Moving Defendants' portion of liability, if any. This means that Opposing Defendants will not be adversely affected if Moving Defendants' Motion is granted.").

Even assuming Denny and Avis had demonstrated that the three defendants in this case will be jointly liable on Plaintiff's negligence claim, Denny and Avis have not cited any case law supporting that potential joint liability at trial automatically gives rise to a "strong interest" by each of the co-defendants in the others' motions for summary judgment, such that they would have standing to oppose. Such a proposition would swallow the rule set forth in the line of cases supporting Co-Defendants' position that the opposing party must articulate the specific adverse effect on their position in the case. Moreover—as the court in *Sikorsky* recognized—joint defendants in such a position generally must advocate for their interests by pursuing a timely cross-claim. Denny and Avis have elected to forego any such claim against CGL here,

7

1 demonstrating their lack of interest and standing. For the reasons stated, the Partial Opposition
2 should be disregarded in its entirety.

### b. The Co-Defendants Improperly Urge the Court to Apply Inapplicable Case Law

Even if the Court deems it appropriate to consider the Partial Opposition, there is nothing therein to undermine the clear conclusion, based on undisputed evidence including Denny's own deposition testimony, that Denny was acting outside the course and scope of his employment at the time of the subject accident.

Denny and Avis agree (as they must) that Denny was not "performing an errand" for CGL when making a middle of the night run for fast food with his girlfriend. ECF No. 43, Partial Opposition at 7:9-10. Instead, they urge that he would still be acting in the course and scope of his employment if his personal errand arguably conferred an "*incidental benefit*" on CGL. ECF No. 43, Partial Opposition at 7:9-10 (citing *Moradi v. Marsh USA*, 219 Cal.App.4th 886, 895 (Cal. App. 4th 2013). Denny and Avis are citing an exception to the going and coming rule recognized in California (but not—to CGL's knowledge—in any Nevada opinion) sometimes called the "*required vehicle exception*." *See Moradi*, 219 Cal.App.4th at 895 (recognizing an 'incidental benefit' test (also known as the "*required vehicle exception*") as an exception to the 'going and coming rule' under California law which applies "if the use of a personally owned vehicle is either an express or implied condition of employment" or "if the employee has agreed . . . to make the vehicle available as an accommodation to the employer and the employer has reasonably come to rely upon its use and [to] expect the employee to make the vehicle available on a regular basis . . . .").

Because no Nevada court has recognized the "*incidental benefit / required vehicle*" exception articulated by the California courts, Danny and Avis are urging an alteration of the "going and coming" rule under Nevada law that would create new exceptions and weaken the rule's protection for employers.[4] Nevada's straightforward test requires that an employee be

---

[4] *See, e.g., Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 865 (9th Cir. 1996) ("When interpreting state law, federal courts are bound by decisions of the state's highest

traveling on a particular "special errand" to accomplish a "task reasonably within the scope of his employment **and** of benefit to his master" in order for employer liability to accrue—any trip to accomplish a "personal objective" does not trigger liability. *See* ECF No. 40, Motion, at 14-15; *quoting National Convenience Stores v. Fantauzzi*, 94 Nev. 655, 584 P.2d 689 (1978):

> On the day of the accident . . . [driver] was heading toward a particular Stop N' Go Market to discuss work related matters with his supervisor pertaining to another day off when he remembered that he had forgotten to obtain the shelving measurements from one of the stores and announced to [his] passengers his intention to go obtain those measurements before resuming his original course. . . .
>
> . . .
>
> Ordinarily tortious conduct by an employee in transit to or from work will not expose the employer to Respondeat superior liability. This is known as the 'going and coming' rule. . . . An exception exists whereby an employee on some 'special errand,' although not during usual working hours, may nevertheless be considered within his scope of employment and under control of the employer.
>
> . . .
>
> In the instant case, [driver] was assigned tasks which of necessity took him away from his normal place of employment. He was required to travel to the various Stop N' Go Markets in Las Vegas to obtain shelf measurements. . . . Had the accident occurred while enroute to discuss with his supervisor the possibility of a day off for the ensuing week, clearly [driver] would not have been within the scope of his employment. [Driver], however, temporarily abandoned his personal objective and turned to accomplish a task reasonably within the scope of his employment and of benefit to his master.

*National Convenience Stores*, 584 P.2d at 691-692. *See also, Molino v. Asher*, 96 Nev. 814, 817, 618 P.2d 878, 879 (1980) (analyzing accident involving co-employees that occurred in their employer's parking lot when both were arriving to work and noting that "the record is devoid of any evidence to show that either party was within the course of employment and under the control of [employer] at the time of the accident in question . . . Clearly there was **no special errand or job responsibility which would have put [defendant driver] in her employer's control**.") (citing *National Convenience Stores*, 584 P.2d at 692; *Ducey v. Argo Sales Co.*, 25 Cal.3d 707, 602 P.2d 755, 768 (1979)). *See also, id.* ("Ordinarily, respondeat superior liability

---

court."); *see also Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002) (noting that, while federal courts may use their best judgment to predict how a state court will address a particular issue, they must "look to existing state law without predicting potential changes in that law.").

9

attaches only when the employee is under the control of the employer and when the act is within the scope of employment.").

Denny and Avis also repeat throughout their Partial Opposition that acts by any employee are within the course and scope of employment if they are "foreseeable" by the employer. *See, e.g.,* ECF No. 43, Partial Opposition at 8-9. They again appear to be drawing language from the inapplicable California *Moradi* case discussing that state's 'required vehicle' exception to the going and coming rule. *See, id.*, *see also, e.g., Moradi,* 219 Cal.App.4th at 903 ("[T]he modern rationale for respondeat superior requires that liability be hinged on the foreseeability and substantiality of the employee's departure from his employer's business."). CGL is unaware of any "foreseeability" analysis within Nevada's test for respondeat superior in negligence cases and the going and coming rule. It is critical to note that in *National Convenience Stores*, the Nevada Supreme Court **specifically declined to adopt the so-called "modern trend" of imposing liability on employer's simply where an employee's act is one of the predicable risks of doing business**, writing:

> Appellants contend that the policy rationale for Respondeat superior traditionally has been anchored on the concept of control but that **modernly the justification is that vicarious liability is simply one risk of business enterprise** [citations omitted]. These authorities provide a valuable analysis of the philosophical history of the Respondeat superior doctrine, but **we find it unnecessary here to adopt the purported modern trend. . . . Neither are we here disposed to adopt a rule of negligence without fault as relates to vicarious liability** . . . [R]esopndents justifiably contend that Nevada's policy rationale for the doctrine of Respondeat superior is grounded on the theory of control rather than on the enterprise theory. We agree. Once a master-servant relationship is established, usually through an analysis of control, the principal inquiry, as made in the court below, is whether the tortious conduct occurred within the scope of employment.

*National Convenience Stores*, 584 P.2d at 691-692 (emphasis added). In this way, the California law of vicarious liability materially deviates from Nevada's adopted doctrine. *Moradi* is irrelevant to the facts of this case.[5]

---

[5] Co-Defendants include a passing citation to *Wood v. Safeway* for the false proposition that "[t]his same foreseeability analysis regarding vicarious liability" has been cited by the Nevada Supreme Court. *See* ECF No. 43, Partial Motion, at 8:17-19 (citing *Wood v. Safeway*, 121 Nev. 724, 121 P.3d 1026, 1036 fn. 53 (2005)). This misstates the holding and effect of *Wood*, in which the Nevada court stated that addressed the applicability of NRS 41.745 to vicarious liability for <u>intentional torts</u>. *See Wood*, 121 P.3d at 1036 ("We have noted that whether an intentional act is reasonable foreseeable depends on whether one has reasonable

10

1	Even if the Court were to put aside the incongruent legal tests and follow a California
2	rule rather than established Nevada law, the facts of the California cases on which Co-
3	Defendants rely are facially distinguishable because this case does not involve an "on call"
4	employee or an employee required to keep his vehicle at his home to conduct company business.
5	In *Lazar v. Thermal Equipment*, the California court examined an employee of an industrial
6	heating equipment manufacturer who was "constantly on call as a troubleshooter," and who was
7	involved in an accident while running errands *en route* to returning the work truck back to his
8	home which often times served as his base of operations. *See Lazar*, 148 Cal.App. 3d 458, 460-
9	461 (Cal. App. Second 1983). A critical fact for the California court was that the "object of the
10	commute was to transport the vehicle to [the employee's] home where it would be at the ready
11	for business use in case [he] received emergency after hours-calls for repair from the employer's
12	customers." *Id.* at 463. In this way, the California court's analysis in *Lazar* was factually similar
13	to the *Evans v. Southwest Gas Corp.* decision in Nevada—already distinguished by CGL in its
14	Motion—wherein an on-call technician employee was involved in an accident while *en route*
15	home in a work truck where the employer required him to drive his work van to his home after
16	his shift to facilitate responding to emergency calls. *See* ECF No. 40, Motion, at 16:26-27:2; *see*
17	*also* 108 Nev. 1002, 1005-1006, 842 P.2d 719, 721-722 (1992). Here, Denny was indisputably
18	not an "on call" employee for any purpose, and was not ferrying any work truck or technician's
19	vehicle to any particular location at the time of the accident. *See e.g.,* ECF No. 40, Motion at
20	4:21-5:5. Thus, the analysis of *Lazar*, relied upon by Denny, is inapplicable here.

21	The *Moradi* decision cited by Denny is also factually distinct. That case involved an
22	employee "commuting to and from work," and who had used her vehicle the same day to
23	"transport herself and some co-employees to an employer-sponsored program," and who
24	"planned to use her vehicle the next day to drive to a prospective client's place of business." 219
25	Cal.App.4th at 891. The court, applying California law, held that the employee's accident while
26	*en route* to her home triggered vicarious liability notwithstanding her planned stops for "frozen

27	---
28	cause to anticipate such act and the probability of injury resulting therefrom.") *Wood*, and Co—Defendants' proposed "foreseeability" analysis, is inapplicable to this case.

yogurt and a yoga class" because her possession and transportation of her vehicle to her home conferred an "incidental benefit" to her employer. *Id.* Here, as pointed out in the Motion, and undisputed by Denny and Avis, Denny had no plans to conduct any recruiting activities for CGL on the day he arrived in Las Vegas, or on the subsequent Saturday or Sunday before the conference. *See* ECF No. 40, Motion at 11:17-12:20. Further, distinguishing this case from *Lazar, Moradi,* and *Evans,* there is nothing in the record to suggest that CGL directed Denny to obtain a rental car rather than utilizing any other available mode of transportation to and from the conference the following Monday, or that he had been instructed the keep the vehicle for any particular CGL purpose the day of the accident or the following day. As stated, even if there were an "incidental benefit" exception (a.k.a. "required vehicle exception") in Nevada law as there is in California, which there is not, it would not apply to the instant facts because this case does not involve a "required vehicle" under that analysis.

Denny and Avis cite other inapposite case law in their Partial Opposition in an effort to expand the exceptions to Nevada's 'going and coming' rule beyond what the Nevada Supreme Court has established. They rely heavily on the *Buma v. Providence Corp. Dev.* case in an apparent attempt to blur the lines between tort law and workers' compensation principles. While it is correct that, for some purposes, courts have *analogized* the vicarious liability test to the test for determining whether an industrial injury has occurred in the workers' compensation context, the *Buma* court analyzed a <u>statutory "travelling employee" principle set forth in Nevada's Industrial Insurance Act ("NIIA")</u> (NRS 616B.612)[6] that is expressly limited to the workers'

---

[6] NRS 616B.612 (emphasis added): **Employers to provide compensation; effect of participation in consolidated insurance program; relief from certain liability**.

    1. Every employer within the provisions of chapters 616A to 616D, inclusive, or 617 of NRS, and those employers who accept the terms of those chapters and are governed by their provisions, shall provide and secure compensation according to the terms, conditions and provisions of those chapters for any personal injuries by accident sustained by an employee arising out of and in the course of the employment.

    . . .

    3. Travel for which an employee receives wages shall, **for the purposes of chapters 616A to 616D, inclusive, of NRS**, be deemed in the course of employment.

    4. In such cases, the employer or any insurer of the employer is relieved from other liability for recovery of damages or other compensation for those personal injuries unless

compensation context, and has not been—and should not be—imported by this Court to impose new rules in Nevada's common law of tort liability. *See, e.g., Buma*, 135 Nev. 448, 451-452, 453 P.3d 904, 908-909 (2019) ("The Bumas are correct that NRS 616B.612(3) creates a travelling employee rule."). In addition to the simple fact that the statute does not apply to tort claims by its plain language, courts have articulated obvious reasons not to import every workers compensation principle relating to employment scope to the tort context. *See, e.g., Carnes v. Phoenix Newspapers, Inc.*, 227 Ariz. 32, 35, 251 P.3d 411, 414 (Ariz. Ct. App. 2010) ("The reason workers' compensation law is not controlling in a tort action is that workers' compensation law and respondeat superior serve different purposes and, therefore, differ in scope and application.").

The Co-Defendants' reliance on the *Berretoni* case, which addressed employer liability under the Federal Tort Claims Act and Montana law, is also unavailing to alter or diminish Nevada's established going and coming rule. *See Berretoni v. U.S.*, 436 F.2d 1372 (9th Cir. 1970). In that 1970 case, the court applied Montana common law to determine that a U.S. airman on "official travel time" *en route* to a South Dakota base was acting in the course and scope of his employment with the federal government. *See id.* at 1372-74 (finding that airman "was in the process of carrying out [his employment at the time of the accident] by proceeding to [the South Dakota base] to report."). The case does not discuss even common law principles of the going and coming rule and is of no persuasive use in analyzing the facts of this case.

### c. The Co-Defendants Fail to Point to Genuine Issues of Fact Precluding Summary Judgment in CGL's Favor on Vicarious Liability

Here, the task for this Court is simply to apply the plain elements of Nevada's 'going and coming rule' and 'special errand' doctrine as articulated in *National Convenience Stores* and *Molino v. Asher* and determine whether Denny was involved in a "special errand" for CGL when returning with Williams to their hotel room after the late night fast food run. *See, also, e.g., Kornton*, 119 Nev. 123, 125, 67 P.3d 316, 317 (2003) (defendant driver was not "**performing a**

---

otherwise provided by the terms of chapters 616A to 616D, inclusive, of NRS.

**service** within the scope of his employment" at the time of the accident) (emphasis added); *see also, e.g., Kaye v. JRJ Investments, Inc.,* 134 Nev. 967, 2018 WL 6133883 (Nev. Ct. App. Nov. 20, 2018) (unpublished) (applying and upholding Nevada law ) ("[T]he undisputed evidence established that at the time of the accident, [employee] was on a break, in his personal vehicle, and leaving the premises to purchase a cup of copy for himself. Critically, nothing in the record suggests that [employee] was engaged in a special, job-related errand that required driving or furthered [employer's] business interests.").

Denny, who at the time of the accident was returning to his hotel room at 4:00 a.m. on a Saturday with his girlfriend after getting fast food <u>at his own expense</u>, was not on any special errand for CGL. The Co-Defendants' conclusory argument appears to be simply that Denny needed to eat in order to sustain himself to commence recruiting activities the following Monday, but of course they cite no Nevada authority establishing such a bright-line and generalized exception to the going and coming rule.[7] To the contrary, Co-Defendants appear to be urging that the Court reject the Nevada Supreme Court-approved special errand doctrine and replace it, in the context of a tort action, with a version of the "travelling employee" rule from workers' compensation law under the NIIA. The persuasive *Engler* case, discussed at length in the Motion, addressed a highly similar argument at length and (evaluating the numerous distinctions between the purposes of workers' compensation and tort law) rejected the proposition that common law respondeat superior should apply to render an employer liable in connection with vehicle trips to obtain food during any work-related travel. *See, e.g.,* ECF No. 40, Motion, at 17:2-18:6; *see also Engler v. Gulf Interstate Eng'g, inc.*, 227 Ariz. 486, 48990, 258 P.3d 304, 307-308 (Ariz. Ct. App. 2011), *aff'd* 230 Ariz. 55, 280 P.3d 599 (2012) (<u>disagreeing</u> with reasoning that "an employee on out-of-town travel status is within the course

---

[7] Denny states that CGL: "*received an incidental benefit from [him] getting food, as the Court can take judicial notice that had Denny not eaten prior to the start of the conference on Monday . .. Denny would likely have been in poor physical condition at the time of the conference.*" ECF No. 43, Partial Opposition at 9:4-9. To the extent this is a serious request for judicial notice, CGL opposes it. Denny has not established that judicial notice of any fact by this court is appropriate. Further, this statement again attempts to import the inapplicable "incidental benefit" analysis from California law under that state's "required vehicle" exception, which should be rejected.

of scope of his employment and subjects his employer to vicarious liability while traveling to and from a restaurant for a regular meal" because "eating is necessarily incidental to a multiple-day assignment," and upholding instead summary judgment for the employer where the employee had returned to his hotel after completing his work duties and his employer "did not control or attempt to control his actions in any way, including directing him where or when to eat, and whether, how, or when to leave or return to his hotel room."). Denny and Avis do not address or make any attempt to distinguish the court's reasoning in *Engler* in their Partial Motion.

The remaining factual arguments that Denny and Avis offer are conclusory and unsupported. The Partial Opposition states that "[CGL] reimbursed [Denny] for all the receipts for the meals he had in Las Vegas the weekend before the conference began," but this misstates Denny's testimony and the evidence. *Cf.* ECF No. 40-5 (Expensify Report, containing no request for reimbursement of any fast food meal purchased prior to the accident); *see also* ECF No. 43-1 (Partial Opposition, Exhibit 1, Denny testimony) at 120:16-21 (when Denny is asked if "Canonical paid for your meals and lodging during this acclimation period"; Denny's own counsel objects that the question "Misstates testimony."). Similarly, Denny and Avis affirmatively misrepresent the evidence in claiming that CGL's representative testified "the receipt for [Denny's] dinner prior to the subject accident had been reviewed by [CGL] and approved." ECF No. 43, Partial Opposition at 4:18-21. As noted by CGL in the deposition testimony upon which Denny and Avis attempt to rely, CGL can only confirm that Denny's midnight meal at Joyful House—which Denny ate four (4) hours before the subject accident—was submitted and reimbursed. Denny's and Williams' middle-of-the-night fast food meal was not included in Denny's reimbursement requests and was never approved by CGL.

Denny and Avis later state that "[CGL] reviewed all of the receipts submitted by Denny regarding his food and meals eaten during the weekend before the start of the conference and approved and reimbursed all of them" and urge that CGL's "payment of Denny's meals is an admission by [CGL] that such meals were incurred in or about the due performance of his duties." *Id.* at 9:23-28. CGL's policy of reimbursing employees for their business expenses

1  **does not** put travelling employees within CGL's control at all times, nor does it mean that every
2  employee who is driving to obtain food that might be reimbursable is "performing a <u>service</u>
3  within the scope of his employment" or a "special errand" as part of their job duties. *See, e.g.,*
4  *Kornton*, 67 P.3d at 317. Putting this aside, Denny and Avis' argument actually proves the
5  opposite of their point. As noted in CGL's Motion (ECF No. 40), (1) Denny submitted to CGL
6  all expenses he believed were expenses related to his business travel; and (2) **while Denny**
7  **submitted for reimbursement the cost of the dinner meal he enjoyed hours earlier, he did**
8  **not submit as a business expense the cost of his middle-of-the-night fast food trip**. Thus,
9  even Denny concedes that this late-night excursion was personal, unrelated to his employment.
10 *See, e.g.,* ECF No. 40, Motion at 11:12-16.

11 Denny and Avis again undermine their own arguments by stating "[CGL] scheduled
12 [Denny] to arrive in Las Vegas a few days before the conference as it provided [CGL] the
13 incidental benefit of [Denny] being fresher and more mentally sharp, and thus a better recruiter
14 than if had [Denny] arrived in town just before the start of the conference." ECF No. 43, Partial
15 Motion at 9:9-10. To the contrary Denny's own testimony clarified that his long day of travel
16 followed by his personal night date with Ms. Williams (through and including their 4:00 a.m. fast
17 food excursion) would be <u>wholly inconsistent</u> with a best practice of preparing for recruiting
18 activities. *See* ECF No. 40, Motion, at 7:26-8:8 (**Q: "[Y]ou don't want to look like you were**
19 **up at 5:00 in the morning in Vegas while you are out recruiting, correct?" A: "Well, I**
20 **wouldn't want to be really, really tired at the conference, no."**).

21 Again, the material facts at issue are not in dispute, and the minimal additional testimony
22 that Denny and Avis put before the Court with their Partial Opposition does nothing to
23 undermine the straightforward principles of respondeat superior or the basic circumstances of
24 Denny's purposes for driving at the time of the accident. In the absence of evidence that
25 Denny's fast food excursion could be construed as a "special errand" for CGL, CGL is entitled to
26 summary judgment on Plaintiff's vicarious liability claim (as well as Plaintiff's other claims).

27 **III.   CONCLUSION**
28 Based on the foregoing, CGL respectfully requests that the Court disregard the Co-

Defendants' Partial Opposition in its entirety on grounds that they lack standing to oppose CGL's summary judgment motion. To the extent the Court is inclined to consider the Partial Opposition, CGL respectfully submits that it fails to identify any genuine issue of material fact to preclude summary judgment in CGL's favor on Plaintiff's claim for vicarious liability. CGL's motion for summary judgment should be granted in full.

Dated: January 19, 2024

**FENNEMORE CRAIG, P.C.**

By: */s/ Wade Beavers*
SHANNON S. PIERCE (Nev. Bar No. 12471)
WADE BEAVERS (Nev. Bar No. 13451)
FENNEMORE CRAIG, P.C.
7800 Rancharrah Parkway
Reno, NV 89511

*Attorneys for Defendant Canonical Group Limited*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of FENNEMORE CRAIG, P.C., and that on this date, pursuant to NRCP 5(b), I am serving a true and correct copy of the **CANONICAL GROUP LIMITED'S RESPONSE TO GORDON DENNY AND PV HOLDING CORP.'S PARTIAL OPPOSITION TO MOTION FOR SUMMARY JUDGMENT [ECF No. 43]** on the parties set forth below by the Court's electronic filing / service system to:

Ramzy P. Ladah, Esq.
Ladah Law Firm
517 South Third Street
Las Vegas, NV 89101
litigation@ladahlaw.com
*Attorneys for Plaintiff*

Gary R. Guelker, Esq.
Resnick & Louis, P.C.
8925 West Russell Road, Suite 220
Las Vegas, NV 89148
gguelker@rlattorneys.com
*Attorneys for Intervenor Allstate Insurance Company*

Robert P. Molina, Esq.
701 Bridger Avenue, Suite 600
Las Vegas, NV 89101
rmolina@pyattsilverstri.com
*Attorneys for Defendants Gordon Denny and Avis Car Rental*

Dated:  January 19, 2024

                                                       */s/  Debbie Sorensen*
                                                      An employee of Fennemore Craig, P.C.