1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                                DISTRICT OF NEVADA

7                                       * * *

8    RONALD CARPENTER,                              Case No. 2:23-cv-00208-RFB-NJK

9                    Plaintiff,                     **ORDER**

10          v.

11   GORDON DENNY, *et. al.*,

12                  Defendants.

13

14          **I.    INTRODUCTION**

15          Before the Court is Defendant Canonical Group Limited's ("CGL") Motion for

16   Summary Judgment. For the reasons stated below, the Court grants the motion and directs the

17   Clerk to enter judgment for Defendant CGL.

18          **II.   PROCEDURAL BACKGROUND**

19          Plaintiff commenced this action by filing a Complaint against Defendants Gordon Denny

20   and PV Holding Corp. (d/b/a Avis Rental Car) ("Avis") on August 31, 2020 in the Eighth

21   Judicial District Court of Clark County, Nevada. ECF No. 1-4. Allstate Insurance Company was

22   granted permission to intervene in this case by the state court's order dated March 25, 2021. ECF

23   No. 1-5. Plaintiff amended his Complaint on November 2, 2021 and again on January 12, 2023.

24   The Second Amended Complaint ("SAC") is the operative complaint and names CGL, Mr.

25   Denny, and Avis as Defendants. ECF No. 1-2. Defendants Mr. Denny and Avis filed their

26   Answer to the SAC in the state court action on January 26, 2023. ECF No. 1-3. CGL removed

27   the matter to federal court on February 9, 2023.

28          On March 10, 2023, Plaintiff moved to remand the case back to Nevada state court. ECF

1    No. 14. The Court held a hearing on Plaintiff's Motion to Remand on January 29, 2024. Plaintiff

2    argued that the case should be remanded because CGL waited until they were named in the

3    Complaint to remove the case even though they were on notice that Plaintiff had the wrong

4    party—CGL's subsidiary Canonical USA—for 2 years. The Court denied the motion, finding

5    that although CGL's behavior in state court was obfuscatory, there was no statutory requirement

6    mandating that mistakenly excluded parties remove once they have notice of the complaint and

7    controlling case law required that the defendant be served in order to trigger the 30-day removal

8    timeline. The Court further concluded that CGL and Canonical USA were not the same

9    operational entity.

10        After two requests for extensions of time on discovery, the discovery cutoff was set for

11    November 15, 2023, with motions due December 15, 2023. On December 15, 2023, Defendant

12    CGL and Avis filed their Motions for Summary Judgment (ECF Nos. 37, 39/40). On this same

13    day, Defendant CGL filed its motion to seal their unredacted sealed version of the motion for

14    summary judgment. ECF No. 38. Plaintiff did not file an opposition brief to Defendant Avis's

15    motion for summary judgment or Defendant CGL's motion to seal. Defendant CGL's motion for

16    summary judgment was fully briefed on February 6, 2024.

17        The Court held a hearing on the motions for summary judgment and motion to seal on

18    June 12, 2024. ECF No. 52. At the hearing, Plaintiff acknowledged that there was no response to

19    Avis's motion for summary judgment, nor any response to portions of CGL's motion for

20    summary judgment. Specifically, counsel for Plaintiff conceded that they had not adduced

21    sufficient facts to support the claims against CGL for negligent entrust and negligent training,

22    hiring, and retention, and noted that they were limiting their opposition to Count I, Plaintiff's

23    negligence/negligence *per se* claim. In light of Plaintiff's confirmation, the Court granted Avis's

24    motion in its entirety and granted CGL's motion for summary judgment with respect to Count II

25    and Count III of the complaint. The only remaining issue for the Court to address is the

26    negligence/negligence *per se* claim against CGL.

27        This Order follows.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.  FACTUAL BACKGROUND

### a.  Material Undisputed Facts

The Court finds the following facts to be undisputed. The collision occurred between Plaintiff and Defendant Mr. Denny around 4:30am on Saturday, November 30, 2019. At the time of the accident, Mr. Denny was employed as a technology recruiter by CGL and was based in CGL's office in London, with the terms of his employment governed by a Contract of Employment dated March 27, 2018. Mr. Denny was a salaried employee, and his contract made clear that he was "not entitled to additional remuneration should [he] work in excess of [his] contractual hours of work." Mr. Denny's contract provided that his working hours would generally be 9am to 6pm, Monday through Friday, with the expectation that he might work "such hours as are necessary for the proper performance of his job" and that "any overtime worked will not attract additional payments." Mr. Denny's employment contract required him to travel for company business on occasion.

On Friday, November 29, 2019, Mr. Denny traveled from London to Las Vegas to attend the Amazon Web Services conference on behalf of CGL. Though the conference did not begin until Monday, December 2, 2029, Mr. Denny took a flight that arrived in Las Vegas on Friday November 29, 2019, the afternoon before the collision. Mr. Denny's supervisor at CGL chose November 29, 2019 as the date for Mr. Denny's flight to give Mr. Denny adequate time to rest and adjust to the eight-hour time difference between London and Las Vegas before the conference. Mr. Denny was appearing at the conference as the face of CGL and arriving in Las Vegas a few days early allowed him to be more rested and mentally sharp at the conference and thus be a better recruiter. CGL paid for Mr. Denny's car rental and hotel bill for his entire stay in Las Vegas, including the days before the start of the conference.

Mr. Denny's contract with CGL also provided that CGL would reimburse Mr. Denny for "all reasonable traveling, hotel and other expenses properly incurred by Denny in or about the due performance of Denny's duties. . ." If Mr. Denny submitted to CGL a receipt for an expense that was not related to his work, such as a personal expense, that receipt would be rejected, and Mr. Denny would not be reimbursed for that expense.

1   While travelling to recruiting events, Mr. Denny would sometimes engage in personal

2   side trips and leisure time in the location of the conference or event. During the weekend before

3   the conference, Mr. Denny spent time with his family who live in Las Vegas as well as his then-

4   romantic partner, Ms. Williams, who stayed with him at the Palms Hotel. Mr. Denny and Ms.

5   Williams participated in a number of activities over the weekend before the conference,

6   including attending a Mariah Carey concert, going to a spa, and gambling. At the time of the

7   accident, Mr. Denny was driving back to his hotel after getting fast food with Ms. Williams. It

8   was in the early morning hours, but Mr. Denny was "running on a slightly different clock" given

9   the eight-hour time difference.

10   Mr. Denny did not submit to CGL as a business expense the fast food that he and Ms.

11   Williams were retrieving for themselves at the time of collision. Other than the receipt for lunch

12   at the Heathrow airport and the receipt from Joyful House several hours before the accident, Mr.

13   Denny did not submit any other expenses for reimbursement from the weekend prior to the

14   conference, November 29 or November 30. CGL placed no limitations on Mr. Denny as to the

15   time or locations where he could eat a meal that was subject to reimbursement.

16   **b.  Material Disputed Facts**

17   The parties dispute the legal effect of the facts.

18   **II.   LEGAL STANDARD**

19   Summary judgment is appropriate when the pleadings, depositions, answers to

20   interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no

21   genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

22   law."  Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When

23   considering the propriety of summary judgment, the court views all facts and draws all

24   inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747

25   F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the nonmoving party "must

26   do more than simply show that there is some metaphysical doubt as to the material facts ….

27   Where the record taken as a whole could not lead a rational trier of fact to find for the

28   nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007)

1    (alteration in original) (internal quotation marks omitted). It is improper for the Court to resolve

2    genuine factual disputes or make credibility determinations at the summary judgment stage.

3    Zetwick v. City of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

4            **III.     DISCUSSION**

5            Plaintiff is no longer pursuing its negligent entrustment and negligent hiring, supervision,

6    and training claim against CGL. Therefore, the remaining claim against CGL is

7    negligence/negligence *per se* under a theory of *respondeat superior*.

8            Defendant CGL moves for summary judgment on Plaintiff's negligence/negligence *per*

9    *se* claim, arguing that any cause of action against CGL under the doctrine of *respondeat superior*

10   fails as a matter of law because the undisputed facts establish that Mr. Denny was not under

11   CGL's control nor acting within the scope of his employment at the time of the collision. CGL

12   argues that Mr. Denny, who was on his way back to his hotel from retrieving fast food, was not

13   engaged in recruiting work at or around the time of the collision. Additionally, CGL had no

14   control of Mr. Denny's activities during the weekend prior to the conference. CGL points to Mr.

15   Denny's deposition, where he testified that he understood the weekend prior to the conference to

16   be his "down time" and that he did not need CGL's "permission" to do anything. CGL argues

17   that this is consistent with Mr. Denny's usual work experience during his tenure at CGL as he

18   only worked "usual working hours" between 9:00am and 6:00pm, and was generally not on "on

19   call" for his employer outside those hours.

20           Plaintiff and Co-Defendants argue in opposition that the traditional *respondeat superior*

21   analysis is inappropriate in the context of business travel. Plaintiff cites Berrettoni v. U.S., 436

22   F.2d 1372, 1374 (9th Cir. 1970), a Ninth Circuit case applying Montana substantive law and

23   Buma v. Providence Corporate Development, 453 P.3d 904, 906 (Nev. 2019), a Nevada worker's

24   compensation case, as well as several cases applying other state's law for the general proposition

25   that a travelling employee is continuously within the scope of employment during a business trip

26   when they are engaging in an activity that confers a benefit on their employer and is a

27   foreseeable incident of their employment. At oral argument, Plaintiff acknowledged that Nevada

28   had not adopted such a broad test for *respondeat superior* in the context of an employee's

1    negligence but argued that Mr. Denny's actions fell within the course and scope of his

2    employment under the special errand exception to the "coming-and-going" rule. Plaintiff argues

3    that CGL is liable for Mr. Denny's conduct because CGL directed and benefitted from Mr.

4    Denny's presence in Las Vegas the weekend before the conference commenced and Mr. Denny's

5    decision to drive from his hotel room to pick up food was foreseeable.

6            **A.  CGL is not vicariously liable for Mr. Denny's tortious conduct**

7            The Court finds as a matter of law that CGL is not vicariously liable for its employee,

8    Mr. Denny's negligence at the time of collision.[1]

9            At the outset, the Court notes that the expanded conception of *respondeat superior*

10   argued by Plaintiff and Co-Defendants in is not supported by Nevada law. The rule announced in

11   Buma is specific to the Nevada's workers compensation statute. No Nevada court has applied

12   this rule when assessing an employer's vicarious liability for an employee's torts, and while

13   concepts from workers compensation doctrine may be considered in the context of *respondeat*

14   *superior*, they are not controlling. Although the Nevada Supreme Court cited a decision from the

15   California Court of Appeals in Wood v. Safeway, Inc., 121 P.3d 1026, 1036 (Nev. 2005), which

16   observed that the tests for *respondeat superior* and workers compensation are similar, the

17   analysis from Wood is not binding on the facts of this case. The Wood court was tasked with

18   analyzing whether a defendant employer was liable under NRS 41.745, a statute specific to the

19   vicarious liability of an employer for an employee's intentional torts. Moreover, the purpose of

20   this citation and observation in Wood was to elaborate on the statutory definition of

21   "foreseeability," as required under NRS 41.745(c), and NRS 41.745 is not at issue in this action

22   for negligence.[2] The other cases that Plaintiff and Co-Defendants cite have no bearing on the

24          [1] In arriving at this conclusion, the Court has considered Defendant CGL's motion for summary judgment and Plaintiff's responsive briefing, as well as co-defendant Mr. Denny and
25   PV Holding Corp.'s opposition to the motion for summary judgment. See Indep. Living Ctr. of S. California v. City of Los Angeles, 205 F. Supp. 3d 1105 (C.D. Cal. 2016) (considering co-
26   defendants opposition briefs so long as they have shown a strong interest in the motion).

27          [2] To the best of the Court's knowledge, the Nevada Supreme Court has only discussed the concept of foreseeability twice in the context of *respondeat superior* and both times it was in the
28   context of an intentional tort and NRS 41.745. Wood v. Safeway, Inc., 121 P.3d 1026, 1036 (Nev. 2005); Anderson v. Mandalay Corp., 358 P.3d 242, 246 (Nev. 2015).

1    Court's analysis because they all apply other states' laws. A federal court exercising diversity

2    jurisdiction must apply the substantive law of the state in which it sits. See Am. Triticale, Inc. v.

3    Nytco Servs., Inc., 664 F.2d 1136, 1141 (9th Cir. 1981).

4                          **i.   Applying Nevada Law To Undisputed Facts**

5          Under Nevada law, vicarious liability requires "proof that (1) the actor at issue was an

6    employee, and (2) the action complained of occurred within the scope of the actor's

7    employment." Rockwell v. Sun Harbor Budget Suites, 925 P.2d 1175, 1179 (Nev. 1996); see

8    also Busch v. Flangas, 837 P.2d 438, 440 (Nev. 1992) (*respondeat superior* liability available for

9    negligent conduct). Under the "coming and going" rule, ordinarily tortious conduct by an

10   employee in transit to or from work will not expose the employer to *respondeat superior*

11   liability. Nat'l Convenience Stores, Inc. v. Fantauzzi, 584 P.2d 689, 691 (Nev. 1978). An

12   exception exists whereby an employee on some "special errand," although not during usual

13   working hours, may nevertheless be considered within his scope of employment and under

14   control of the employer. Id. "Generally, whether an employee is acting within the scope of his or

15   her employment is a question for the trier of fact, but where undisputed evidence exists

16   concerning the employee's status at the time of the tortious act, the issue may be resolved as a

17   matter of law." Rockwell v. Sun Harbor Budget Suites, 925 P.2d 1175, 1180 (Nev. 1996);

18   Kornton v. Conrad, Inc., 67 P.3d 316, 317 (Nev. 2003).

19         As the parties have acknowledged, there is no Nevada case directly on point with the

20   facts of this case; however, a review of Nevada precedent reveals several factors that Nevada

21   courts deem most important in determining whether the employee was acting within the course

22   and scope of his employment. This includes whether at the time of the collision, the employee

23   was "on-call" or compensated for the time, see, e.g., Evans v. Sw. Gas Corp., 842 P.2d 719, 723

24   (Nev. 1992); Kornton, 67 P.3d at 317; whether the particular vehicle trip was directed by the

25   employer or accomplished for the benefit of the employer, see National Convenience Stores,

26   Inc., 584 P.2d at 692, and whether the nature of the vehicle trip was consistent with the

27   employee's assigned role and duties. Id.

28         In Evans, 842 P.2d at 720, a gas company driver was driving the company van home

1   when he collided with a school bus. The court held that the employee driver was both under the

2   gas company's control and furthering a company purpose at the time of the collision because

3   although the employee was en route home, the gas company required that he drive the company

4   van home in order to facilitate his ability to respond to emergency calls. Id. at 722.

5        In National Convenience Stores, Inc., 584 P.2d at 690, an employee was assigned to

6   revamp convenience stores. This job required him to drive his personal vehicle to various stores

7   and measure shelving space at those stores. Id. On his day off, he was driving with his wife and

8   two friends in his own personal vehicle. Id. He was en route to speak to his employer about

9   taking additional time off when he remembered that he had forgotten to obtain shelving

10  measurements from one of the stores and decided to obtain those measurements before heading

11  back to speak with his employer. Id. at 691. On his way to the store, the employee collided with

12  another vehicle. Id. The court held that the employee was acting with the scope of his

13  employment at the time of the collision because he had turned to accomplish a task that was to

14  the benefit of his employer and his actions were consistent with his assigned role and duties—

15  driving in his personal vehicle to various markets in Las Vegas to obtain shelf measurements. Id.

16  at 692.

17       By contrast, in Connell v. Carl's Air Conditioning, 634 P.2d 673, 675 (Nev. 1981), the

18  court found that an employee who crashed into another car on his way home from work was not

19  within the scope of employment. The employee was on call 24 hours a day, and on limited

20  occasions he would be required to use the vehicle to go to a job site in an emergency. Id. at 674.

21  However, the court highlighted the lack of evidence that the employee was running any errands

22  for his employer, working overtime, or responding to emergencies on the day of the accident. Id.

23  The court further noted that over a three-year period, the employee was only required to respond

24  to late calls twice. Id.; see also Savicic v. Eighth Jud. Dist. Ct. ex rel. City of Clark, No. 52122,

25  2008 WL 6113497, at *2 (D. Nev. Nov. 19, 2008) (finding summary judgment for defendant

26  employer was proper because employee was driving home after finishing work for the day and,

27  even if he had been taking his coworkers home, there was no evidence that he was on a special

28  errand or conferring a benefit on the employer).

1    Applying the factors and line of precedent discussed above to the facts at issue here, the

2    Court finds that Plaintiff has failed to raise a genuine issue of fact as to whether Mr. Denny's trip

3    to get food in the early morning hours was within the scope of his employment at CGL.

4    First, the undisputed evidence shows that Mr. Denny was not "on call" at the time of the

5    subject incident. Mr. Denny testified that he viewed his time during the weekend before the

6    conference as his "personal downtime," and that he was "not restricted on where [he] go[es]"

7    during this time. ECF No. 39-3 at 84. He was free to do whatever he wished and engaged in

8    personal, non-work activities, such as attending a Mariah Carey concert, a spa appointment, and

9    spending time with his family and his then-romantic partner. Id. at 50-53, 80. Further, although

10   the purpose of his presence in Las Vegas was to attend the conference and recruit new

11   employees, it is undisputed that Mr. Denny did not engage in any recruitment activities the

12   weekend before the conference. Id. at 123.

13   Second, Mr. Denny's trip to obtain fast food at 4:30am on Saturday morning was not

14   consistent with his typical assigned duties or role. And, other than receiving reimbursements of

15   expenses,[3] CGL did not pay Mr. Denny for any post-work activity. Mr. Denny was a salaried

16   employee and his contract provided that his working hours would generally be 9am to 6pm,

17   Monday through Friday, with the expectation that he might work "such hours as are necessary

18   for the proper performance of his job" and that "any overtime worked will not attract additional

19   payments." ECF No. 39-2 at 6. It is undisputed that he rarely worked weekends during his time

20   at CGL, he was not working during the weekend before the conference, and there is no evidence

21   suggesting that this particular trip to obtain food was "necessary for the proper performance of

22   his job." ECF No. 39-3 at 17.

23   Relatedly, there is no evidence suggesting that Mr. Denny's fast-food trip was either

24   directed by or for the benefit of CGL. By selecting his arrival date, Mr. Denny's supervisor

25   ───────────────

26   [3] Notably, Mr. Denny never sought reimbursement for the fast-food meal he was retrieving at the time of
     the collision. ECF No. 39-5. Although he did seek and receive reimbursement for a meal just hours prior to the
     collision, id., no Nevada case has held that travel reimbursements on their own are sufficient to subject the employer

27   to liability/create a genuine issue of fact as to scope of employment. Other states to consider this issue have
     expressly held that reimbursements alone are insufficient. Engler v. Gulf Interstate Eng'g, Inc., 280 P.3d 599 (Ariz.
     2012); Lundberg v. State, 306 N.Y.S.2d 947 (N.Y. 1969).

28

- 9 -

1    directed Mr. Denny to arrive in Las Vegas the Friday before the conference. Ostensibly, CGL

2    "benefited" from Mr. Denny's early arrival because it gave Mr. Denny time to acclimate and

3    rest. However, as counsel for Plaintiff acknowledged at oral argument, this does not mean that

4    Mr. Denny was acting within the scope of his employment during the entire pre-conference

5    weekend or business trip. There must be some relationship between the employee's conduct

6    causing the injury and the duties of employment. Plaintiff contends that the procurement of fast

7    food was to the benefit of CGL because it provided Mr. Denny with the sustenance needed to

8    perform his recruitment duties at the conference. However, his need to eat in Las Vegas was no

9    more beneficial to the performance of his job duties than his need to eat while not on an out-of-

10   town assignment. See Kornton, 67 P.3d at 217 (finding that employer did not receive "benefit"

11   from employee's transportation of a tool between job sites as this was a commonsense

12   practicality).

13           Accordingly, the Court finds as a matter of law that Mr. Denny's conduct at the time of

14   the accident was not within the scope of his employment at CGL. The Court therefore grants

15   CGL's motion for summary judgment on the remaining negligence/negligence *per se* claim.

16           **B. Motion to Seal**

17           Separately, Defendant CGL requests that the Court file Mr. Denny's Employment

18   Contract (Exhibit 2) under seal, redact the portions of the Motion that quote the contract, and

19   redact the portions of Exhibit 3 (Mr. Denny's deposition transcript) that quote the contract. CGL

20   seeks to seal this information because it contains information related to CGL's compensation and

21   benefits packages for its employees, as well as Mr. Denny's personal information, including his

22   address, which CGL has not been authorized to disclose. The Court finds compelling reasons

23   exist for sealing and redacting these particular documents and therefore grants the motion to seal.

24   See Ctr. for Auto Safety v. Chrysler Group, LLC, 809 F.3d 1092, 1097 (9th Cir. 2016)

25   (compelling reasons include protecting "business information that might harm a litigant's

26   competitive standing."); LR IC 6-1 (parties must refrain from including certain personal data-

27   identifiers).

28

1

**IV.    CONCLUSION**

2

   **IT IS THEREFORE ORDERED** that Defendant Canonical Group Limited's Motion

3

for Summary Judgment [ECF No. 39/40] is **GRANTED** in its entirety.

4

   **IT IS FURTHER ORDERED** that Defendant Canonical Group Limited's Motion to

5

Seal Document [ECF No. 38] is **GRANTED.**

6

   The Clerk of Court is instructed to enter judgment for Defendants CGL and PV Holding

7

Corp. accordingly.

8

   **DATED:** September 29, 2024.

9

10

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28